LOWRY *v.* PAW PAW SAVINGS BANK.

1. CHANCERY APPEAL—FINDINGS OF COURT.
   In a chancery case, where the question is a doubtful one, the
   Supreme Court will give great weight to the findings of the
   circuit court on questions of fact, but will examine the case
   *de novo,* and, if satisfied that a different conclusion should
   have been reached, will reverse the decree.

2. COLLATERAL SECURITY — DISCHARGE OF MORTGAGE — ACCOUNT-
   ING.
   Complainant assigned a mortgage to a bank as collateral secu-
   rity for a loan of less than the amount of the mortgage. The
   bank foreclosed the mortgage, which it afterwards discharged
   upon receipt of only the amount due it on the loan. *Held,*
   that the evidence showed that the mortgage was discharged
   at the request of complainant, and that a bill for an account-
   ing for the difference between the amount of the loan and
   the mortgage could not be maintained against the bank.

Appeal from Van Buren; Yaple, J., presiding. Sub-
mitted January 13, 1903. (Docket No. 27.) Decided
February 3, 1903.

Bill by George Lowry against the Paw Paw Savings
Bank for an accounting. From a decree for complainant,
defendant appeals. Reversed.

*Thomas J. Cavanaugh,* for complainant.

*A. Lynn Free* and *Lincoln H. Titus,* for defendant.

MOORE, J. This is a bill to compel an accounting.
From a decree granting the prayer of the bill, defendant
has appealed.

This bill was filed the latter part of March, 1900. The
record discloses that on January 15, 1887, complainant
borrowed of defendant $100, giving his note therefor, and
assigned to said bank, as collateral security, a mortgage
dated September 27, 1886, for $400, due in five years,

given by James Lowry and wife to George Lowry. This assignment was put upon record in the office of the register of deeds. The complainant did not pay his debt when it became due, and the assigned mortgage was foreclosed by advertisement, and the land mentioned therein was sold to Mr. Free, the cashier of the bank; the sheriff's deed running to John W. Free, trustee. It was dated May 28, 1888, and was duly recorded. This sale was redeemed from January 2, 1889. The bank was paid the amount due it from complainant, and on the same day Mr. Free, as cashier, executed a marginal discharge of the mortgage in the office of the register of deeds. An entry was also made on the margin of the record of the sheriff's deed that the land had been redeemed and the deed destroyed. On the 15th day of January, 1895, Mr. Free wrote on the margin of the record of the assignment that he, as cashier, had received payment of the debt secured by the assignment, and on the margin of the record of the mortgage that it was through an error the previous marginal entry of a discharge of the mortgage was made.

As early as January, 1889, James and Elizabeth Lowry sold the land described in the mortgage to Alvin and Theckla Bennett; making no mention in the deed of the mortgage given to George Lowry. In August, 1897, George Lowry filed a bill in chancery to foreclose the mortgage of September 27, 1886; making, among others, Mr. Bennett defendant. He obtained a decree in his favor in the court below, but in this court (*Lowry* v. *Bennett,* 119 Mich. 301 [77 N. W. 935]) Mr. Bennett prevailed. A reading of that case will aid somewhat in understanding this one. The opinion in that case was handed down in January, 1899, and this case for an accounting was commenced, as before stated, in March, 1900. It is complainant's claim that Mr. Breck, acting for the bank, commenced the foreclosure proceedings that resulted in a sale of the premises to Mr. Free as trustee; that his brother James paid the money which redeemed from this sale; that Mr. Free had no right to discharge the mortgage,

but should have discharged the assignment of the mortgage; that complainant had no knowledge this discharge had been made until long afterwards, and was unable to recover the note he had given for the debt of $100, and the papers he assigned as collateral security, until at or about the time of the death of Mr. Breck, who died December 11, 1894; that James Lowry and his wife are insolvent; that, as this court has held Mr. Bennett obtained the land free from this mortgage, the bank should be held to account to him for the amount of said mortgage and interest, the same as though it had been paid to the bank.

It is the claim of the bank that Mr. Breck, though a director of the bank, was acting for complainant in making this loan; that, when the redemption was made, the bank received only what was due it on the $100 loan and interest; that the money was paid to the bank either by the complainant, or by Mr. Breck in his presence, and at the same time the $100 note and the other papers were delivered to the complainant, and that it was at the request of the complainant the mortgage was discharged; that this was done because it had been paid; that the later entries were made in the office of the register of deeds at the request of the complainant, who claimed the previous entries had been made by mistake; and that complainant made no claim until shortly before this suit was brought that the bank had done anything for which he had a cause of action against it.

The record shows that James Lowry died in 1889. Mr. Richardson, who examined the records when Mr. Bennett obtained his deed of the premises, died in December, 1896. Mr. Bennett died in June, 1899. The record also shows that in July, 1886, George Lowry and his wife gave to Alvin Bennett and Theckla A. Bennett a mortgage for $700, which mortgage was foreclosed, and the land described therein sold, and redeemed by the payment of $767 on the 29th of March, 1889.

A great many interesting questions are argued by coun-

sel to meet the varying phases of the case.  Each party
claims that, upon the question of fact, the court should
find with it.  It is also claimed by the complainant that
the bank is Mr. Lowry's trustee, and the statute of limi-
tations would not begin to run until the bank repudiated
the trust by refusing to account to him.  It is the claim
of the defendant that the trust ended, and the statute of
limitations began to run, when the mortgage was dis-
charged, in 1889, and that, in any event, it began to run
when Mr. Lowry obtained the papers, as early as the fall
of 1893, from Mr. Breck, and, as this suit was not com-
menced until March, 1900, it was commenced too late.

It is not necessary to pass upon all these questions.  In
a chancery case, where the question is a doubtful one, this
court will give great weight to the finding of the lower
court upon questions of fact, where the witnesses are ex-
amined in open court; but nevertheless this court must
examine the case *de novo*, and, where it is satisfied the
complainant has failed to make a case, it is the duty of
this court to dismiss the bill of complaint.  The court is of
the opinion the complainant has not established his case.
His own testimony is contradictory.  In the bill of com-
plaint he filed against Mr. Bennett, probably to excuse
his laches in commencing the suit, he swore he was unable
to secure the papers from Mr. Breck or the bank until
after the death of Mr. Breck.  Upon the trial of this case
he swore he obtained them from Mr. Breck, probably the
year before his death.  In the former bill he swore:

"Your orator further shows that afterwards, and on or
about the 2d day of January, 1889, he caused the said
$100 and all interest thereon to be paid to said Paw Paw
Savings Bank, and then and there requested the said Paw
Paw Savings Bank to discharge the assignment of the
mortgage; but, notwithstanding said request, the said
John W. Free, cashier of said Paw Paw Savings Bank,
caused to be entered upon the records of said mortgage in
the register's office for Van Buren county the words and
figures following, viz.:

"'In consideration of the full payment of all moneys secured to be paid, I hereby discharge the same of record, as cashier of the Paw Paw Savings Bank.

"'January 2, 1889.

"'JOHN W. FREE,
"'Cashier of Paw Paw Savings Bank.

"'In presence of
"'J. D. MONROE,
"'Register.'"

In this case he testified that he did not pay the money to the bank, and was not present when it was paid, and did not request Mr. Free to go to the register's office at that time, but that all that business was attended to by James Lowry, and that he did not get the papers he had assigned to the bank until as above stated.

Mr. Lowry was not a wealthy man. As before shown, in July, 1886, he gave a mortgage for $700, which was foreclosed, and which he redeemed in March, 1889. In 1887 he was a borrower from the bank. He was not able to pay, or at least he did not pay, this debt when it matured. It was not until after the mortgage he had assigned as collateral security had been foreclosed that this debt was paid. If at this time he still had an outstanding interest of three or four hundred dollars in the mortgage his brother gave him, he would have insisted, when his debt to the bank was paid, on the mortgage being delivered to him. His brother James died in 1889. The mortgage he had given to George became due in September, 1891, though it had a provision giving James the right to pay $100 or more at the end of any year after two years from its date. According to the testimony of the complainant, this mortgage was upon property worth ten or twelve hundred dollars, and James died insolvent; and yet complainant took no steps to collect this mortgage until in 1897. It appears from the testimony of complainant that in the other case Mr. Bennett testified that George Lowry was present when Mr. Bennett had Mr. Richardson examine the title, at the time he bought the land from James, and pronounced the land free from

incumbrances, and then made no claim he had a mortgage upon the land. This testimony was disputed by complainant. There is no claim the bank had any interest in this mortgage, except to the amount of $100 and the interest, or that it received anything else. It had no reason for making any discharge, except such a one as would be proper under the then situation. The cashier testified that, when the bank was paid its money, the note and other papers were delivered over to the complainant, and the mortgage was, at his request, discharged. This discharge was made January 2, 1889, and on the 30th of the same month James Lowry and his wife conveyed the premises by warranty deed to Mr. Bennett. It is improbable they would have done this if their mortgage to George was yet unpaid. It is not until six years later that any claim is made to the bank that a mistake was made, and the mortgage was discharged when only an assignment of the mortgage should have been discharged. The record evidence in the case, and the acts of the parties cognizant of the facts at the time they occurred, are consistent with the claim of the cashier, and inconsistent with the claim of complainant.

The decree of the court below is reversed, and one will be entered here dismissing the bill of complaint, with costs of both courts.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.