SIMMONS &c. COMPANY v. BANK OF GREENWOOD.

1. ACTION BY PAYEE OF CHECK—NON-SUIT.—In action by payee of check against the bank on which drawn, a non-suit cannot be ordered for want of evidence of funds on hand, where there was some evidence of funds sufficient to the credit of the account on which drawn.

2. IBID.—EXCEPTION to testimony by drawee of check as to amount of money on deposit in defendant bank overruled, the pass book not having been called for, no ruling made, and such testimony being competent, because the drawer testified of his own knowledge.

3. EXCEPTION not sustained by the appeal record. overruled.

4. EVIDENCE.—Testimony by a depositor and a cashier as to why two accounts of the depositor in the bank were kept separate, was properly excluded, as it called for merely an opinion. But testimony as to the reason for drawing checks on one of these accounts in favor of the other was admissible, as explanatory of a fact.

12—41

5. Evidence—Objections.—Testimony by plaintiff's attorney that he had been informed by the cashier of the defendant that there was money enough in bank to the credit of the account upon which plaintiff held a check to pay it, and that witness had so informed his client before action commenced, cannot be excepted to where brought out on cross-examination without objection, though ruled out previously; and such testimony was competent, even if objected to.

6. Action by Payee of Check—Acceptance—Case Criticised.—The holder of a check on a bank, in which the drawer has on general deposit to his credit funds sufficient to pay the check, may maintain action against the bank, after demand and refusal, without acceptance or certification. Fogarties & Stillman *v.* State Bank, 12 Rich., 518, stated, followed, and approved.

7. Check—Bill of Exchange.—A difference between a bank check and a bill of exchange stated.

8. Custom of Bank—Two Accounts—Indebtedness.—Where a customer kept two deposit accounts in the same bank, one his general merchandise account and the other his cotton business account, and it was the long continued habit of the bank to pay all checks drawn on balances to the customer's credit on the merchandise account without regard to overdrafts, or notes given to cover overdrafts, on the cotton account, the bank could not, without previous notice to the customer, refuse payment of a check drawn by him on funds to his credit on the merchandise account, on the ground of his indebtedness by overdraft and past due notes on the cotton account.

9. Charging Juries—Misstatement.—Objection to the misstatement of testimony by the judge to the jury cannot be raised by exception noted after trial. There was no misstatement here.

10. Ibid.—Error Cured by Verdict.—Where the verdict gives to plaintiff the whole amount of the check sued on, this court will not consider an exception imputing error to the charge as to plaintiff's right to recover in part.

11. Estoppel.—Where the holder of a check, relying upon the statements of the officers of the bank on which the check is drawn, is induced to take a course different from that which he would otherwise have taken, and is thereby misled to his prejudice, the doctrine of estoppel will apply.

12. Charge on Facts.—There was no charge in this case on facts in issue.

13. Cashier—Agency—Admissions.—The cashier of a bank is the agent of a bank, and his admission of funds sufficient to pay a check is binding on the principal.

Before Izlar, J., Abbeville, January, 1893.

Action by Simmons Hardware Company against Bank of Greenwood, commenced February 25, 1892, on an ordinary

check drawn by Jervey & Co. on the defendant in favor of the plaintiff for $163.97. The judge charged the jury as follows:

Mr. Foreman and Gentlemen of the Jury: This is a very interesting case. It is not free from difficulty, especially on the part of the court. I shall endeavor, however, to give you my understanding of the law, and then leave the case with you. If I err in my judgment in regard to this case, the parties have another tribunal to which they can go and correct me, and I am glad that it is so, because I have some doubts as to the correct principles upon which this case should be decided. It is new and novel.

The plaintiffs bring this action to recover the amount due by the defendant bank on a check drawn by Jervey & Co. in favor of the plaintiffs for $163.97, dated January 2d, 1892. It appears from the testimony in this case (and if I misstate it, gentlemen, I would like to be corrected,) that Jervey & Co. were doing business in Greenwood, South Carolina, where the bank is located, that they did business with this bank, deposited their monies there, and received monies from the bank for the purpose of carrying on their business; that the bank kept with Jervey & Co. two separate accounts, one headed "Jervey & Co., C. A." This, the testimony shows, was intended to mean "cotton account." And, at the same time, they kept another account, which was simply headed "Jervey & Co.," and which has been designated in this case as the "merchandise account." Now that was the course of doing business between Jervey & Co. and the Bank of Greenwood. The testimony shows that Jervey & Co. used two kinds of drafts. When they intended a draft to be paid on account of the merchandise account, they used one kind of draft, and when on account of the cotton account, another kind of draft, and that the two accounts were kept separate. And the testimony further goes to show that there were no drafts drawn on the cotton account to pay amounts owing on the merchandise account. That was the manner of business between the two, I believe.

Now, on the 2d of January, 1892, Jervey & Co. drew a draft on the bank for $163.97, in favor of the Simmons Hardware

Company, and in due course of time that draft was presented at the Bank of Greenwood for payment, through the Boatman's Bank, I think it is, and the testimony shows that the bank protested the draft, and sent it back, and in their protest they say that they protested it on the grounds that they had no funds with which to meet the draft. Afterwards, the plaintiffs in this action took up the draft, and the draft was returned to them, and they have instituted this action now against the bank for the purpose of recovering the $163.97. Now, I charge you that, if Jervey & Co. drew this draft in favor of the Simmons Hardware Co. (and you will determine that from the testimony), and that draft was presented to the Bank of Greenwood, and at that time the Bank of Greenwood had sufficient money to the credit of Jervey & Co. on the merchandise account to meet that draft, the plaintiffs would have good cause of action against the bank, and would be entitled to recover. Because, when they deposited their money in the bank, there was an implied contract that the bank would disburse the monies to the credit of Jervey & Co. as long as they had monies there to meet their drafts.

I charge you further, that it does not matter if the cotton account was overdrawn at the time this check was presented, this did not warrant the bank to refuse payment if they had a credit on the merchandise account, because that was not the course of dealing between them, and it is for you to say whether, or not, at the time this draft was presented they had sufficient funds on the merchandise account to meet this draft. If they had, the bank was bound to pay. If the bank had only $142 to the credit of Jervey & Co. on that account (merchandise), the bank was not required to honor that draft and pay it. But the bank says, by reason of the mistake of the assistant cashier, the true state of the merchandise account of Jervey & Co. with the bank was not shown; that the apparent balance on this account in favor of Jervey & Co. was erroneous; that the bank did not actually owe Jervey & Co. on this account, at the time the check was presented, but $142.71, an amount insufficient to pay the check. This mistake, however, was not discovered for some time after the refusal to pay the check, and

after the check had been protested for want of funds to meet it, and after this action had been commenced.

Now, did the declarations and statements of the bank, as to the account of Jervey & Co. with the bank, mislead the plaintiffs and induce them to act differently from what they otherwise would have done, had not such statements been made? By their statements, the bank assumed the position of being a debtor to Jervey & Co. in a sum more than sufficient to meet the draft. This fact does not seem to be disputed. Now, if the plaintiffs, relying upon those statements of the officers of the bank, were induced to take a course different from that which they otherwise would have done, and have been misled to their prejudice, it seems to me, that there would be room for the application of the doctrine of estoppel. If you find this to be the state of facts, from the evidence before you, the defendant must take the consequences of the position they assumed. I must, therefore, in the view I take of the law (in case you find this state of facts to exist), charge you that the defendant bank is estopped to deny the reality of the state of things which it made appear to exist, and upon which the plaintiffs were led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law so regards it. That is my view of the law of this case and, it seems to me, that that covers the whole case according to the circumstances developed by the testimony.

Mr. McGowan: May it please the court, I withdraw my requests to charge.

The Court: I am requested to charge you, by the defendant, Bank of Greenwood, as follows:

*First.* "That if the jury find that at the time the check sued on was presented for payment, Jervey & Co., the drawers, did not have on deposit in said bank money enough to pay the check in full, the bank rightly refused payment, and plaintiff cannot recover." Of course; I have already charged you that in effect, and you will take that as the law under the charge as I have already given it to you.

*Second.* "That the bank was not obliged to make a partial payment on said check." I have in effect charged you that.

*Third.* "That if the jury find that the account on the bank's books headed Jervey & Co., and the account headed Jervey & Co., C. A., were the accounts of the same parties, and that the money deposited on both accounts was the money of same parties, and the bank kept the two accounts separate only for convenience, then there was but one deposit account, and all money credited to Jervey & Co. was subject to any check drawn on said bank by Jervey & Co." That would be so if the facts warranted it. The testimony, as I understand it, tends to show a different state of facts.

*Fourth.* "That if the jury find that the total amount of the checks drawn by Jervey & Co. on said bank exceed the total amount of money deposited by them, their account was overdrawn, and the bank rightly refused to pay the check sued on." That would be so, under the charge that I have given you, if it related to the merchandise account.

*Fifth.* "That even if Jervey & Co. had a balance of money to their credit in said bank, and owed the bank on past due notes an amount of money exceeding the amount of such balance, the bank rightly refused to pay said check, and had the right to hold such balance and apply the same as a credit on said notes." I cannot so charge you.

*Sixth.* "That if Jervey & Co. were insolvent, and made an assignment of their property for the benefit of their creditors within ninety days after the date of said check, and that said check was drawn to pay a past due debt, or debt already existing, of said Jervey & Co., the attempted payment was wrong and void, and plaintiff cannot recover the amount of said check." I cannot so charge you, because it is inapplicable to the facts of this case.

*Seventh.* "That the rights of the plaintiff to payment of said check are subject to the rights of set-off which the bank had against Jervey & Co., and that any right to money on deposit transferred to the plaintiff by said check, was transferred subject to all equities existing, at the time said check was drawn, between said bank and Jervey & Co." This is good law perhaps, as a general proposition of law, but under the pleadings

in this case, and undisputed facts, is inapplicable to the case, as I understand it.

*Eighth.* "If the jury find that $142.71 was the actual balance to the credit of Jervey & Co. in Bank of Greenwood, at the time the check sued on was presented, payment was rightly refused, and the plaintiff cannot recover." I have in effect charged you that, but you must remember the distinction that I have given you with reference to the two accounts.

*Ninth.* "The statement of J. W. Greene, cashier, that Jervey & Co. had sufficient funds in bank to pay the check sued on, made by him after said check was drawn, received by plaintiffs, and presented for payment, could not bind the bank, if in fact the said Jervey & Co. did not have sufficient funds for this purpose on deposit in said bank." Well, that would be true, as I have already said, if we confine ourselves to the law as I have given it to you in reference to the dealings between the parties.

*Tenth.* "The bank is not estopped by any declaration made by J. W. Greene, cashier, after the check was presented, from showing that there was not funds sufficient to pay check on deposit to the credit of Jervey & Co., and that no statement made by J. W. Greene can estop the bank, unless it can be shown that the plaintiffs accepted the check upon faith of the declarations of J. W. Greene, cashier." Well, so far as the introduction of oral testimony to show was concerned, the testimony was admitted, and so far as the estoppel was concerned, you must take the law as I have given it to you.

*Eleventh.* "That the plaintiffs cannot recover the $142.71 unless they can show that they offered at the time to accept a partial payment." I cannot charge you that.

*Twelfth.* "That no testimony at all has been offered tending to show that the plaintiff offered or was willing to accept a partial payment." I cannot charge you that, under the circumstances of this case.

*Thirteenth.* "That the plaintiff can only recover in this action, if at all, on the check sued on, and cannot recover the $142.71 on the ground of an assignment and transfer of title to it, there being no such cause of action set forth in the complaint."

Well, I would hold in this case, although the action is brought
upon the check, if you come to the conclusion that the testimony warrants it under the law that I have given to you, that
under the circumstances in this case, and between the parties,
the plaintiffs might nevertheless recover the $142.71, in case
you find that there was that much money to the credit of Jervey & Co. on the merchandise account at the time that the
check was presented. If you come to the conclusion that the
bank was estopped under the law as I have given it to you,
you need not go any further on that branch of the case.

The jury found for the plaintiff $178.56, and judgment was
entered in accordance with the verdict. Defendant appealed.

*Mr. M. P. DeBruhl,* for appellant.

*Messrs. Parker & McGowan,* contra.

April 2, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The object of this action was
to recover the amount of money mentioned in a check drawn
by Jervey & Co. on the 2d of January, 1892, on the defendant
bank, payable to the order of the plaintiff. Inasmuch as the
plaintiff resided, and did business, in a distant State, the check
was not presented for payment until the 8th of January, 1892,
when payment was refused ("no funds"), and on the next day
it was formally protested for non-payment.

Without undertaking to set out the evidence adduced at the
trial, which appears in the "Case," it is sufficient to state here
that there was testimony tending to show that Jervey & Co.
were merchants in the town of Greenwood, also engaged in the
business of buying and selling cotton; that they had been doing
business with the defendant bank for several years, the bank
advancing the money to buy the cotton, and taking from Jervey & Co. drafts drawn by them against the cotton so bought;
that Jervey & Co. kept two deposit accounts with the bank,
one of which is designated as the merchandise account, upon
which was credited money arising from the sales of merchandise, and upon which checks were drawn to pay for the merchandise bought, and the other designated as the cotton

account, upon which the money advanced to buy cotton was charged, and the drafts drawn against the cotton were cred. ited; that the merchandise deposit account was headed "Jervey & Co.," while the cotton deposit account was headed "Jervey & Co., C. A.;" that the checks drawn on these two deposit accounts were of a different style, and were signed differently, one being "Jervey & Co." and the other "Jervey & Co., C. A.," so as to indicate to which of the two accounts they were to be charged; that the merchandise account ran regularly on from year to year, while the cotton account began and closed with the cotton season, and at the close of the season, the balance on the cotton account, which was usually, if not always, against Jervey & Co., was closed by note; that the bank had always previously been in the habit of paying the checks of Jervey & Co. on the merchandise deposit, whenever there was money sufficient to the credit of Jervey & Co., without regard to the fact that the balance was against them on the cotton deposit account, or that the bank held their past due notes given to close the previous cotton season's account; that when the check here in question was presented for payment there appeared on the books of the bank a balance on the merchandise account in favor of Jervey & Co. more than sufficient to pay said check, and that the only reason given for refusing payment thereof, was that Jervey & Co. then owed the bank a large balance on the cotton account, besides notes past due to a large amount; that subsequently it was discovered that, owing to an error in the books of the bank, the balance in favor of Jervey & Co. on the merchandise account was, in fact, not sufficient to meet the check, but this discovery was not made until after the check had been protested, and after the commencement of this action.

It seems that at the commencement of the trial a motion was made to dismiss the complaint upon the ground that the facts stated therein were not sufficient to constitute a cause of action, inasmuch as there was no allegation that the check had been accepted by the bank; but this motion was refused, and the trial proceeded. At the close of the testimony on the part of the plaintiff a motion for a non-suit was made upon two

grounds: 1st. "Because there was no evidence that there was money enough on deposit in said bank to the credit of Jervey & Co. to pay the check sued on at the time the same was presented." 2d. "Because there was no evidence that the check sued on had been accepted by the defendant bank, or certified by it as good." At the close of the testimony and the argument of counsel the case went to the jury under the charge of his honor, Judge Izlar, and the verdict was in favor of the plaintiffs for the whole amount of the check with interest, and the defendant appeals upon twenty-seven grounds from the judgment entered upon the verdict.

We shall not undertake to state or consider these numerous grounds in detail, but will confine ourselves to such questions as these grounds properly present: 1st. Whether there was error in refusing the motion to dismiss the complaint upon the ground above stated. 2d. Whether there was error in refusing the motion for a non-suit. 3d. Whether there was error in any of the rulings as to the competency of the testimony offered. 4th. Whether the action could be maintained without allegation and proof that the bank had accepted the check. 5th. Whether the bank had the right to set up as a defence to the action the balance due to it by Jervey & Co. on the cotton account or on the past due notes. 6th. Whether there was error in misstating the testimony to the jury. 7th. Whether there was error in the instructions to the jury as to the right of plaintiffs to recover a part only of the amount mentioned in the check. 8th. Whether there was error in the instructions given to the jury as to the doctrine of estoppel.

As to the first ground upon which the motion for a non-suit was based, it is sufficient for us to say that we think there was some testimony tending to show that Jervey & Co. had sufficient funds to their credit on the merchandise deposit account to meet the check at the time it was presented, and, therefore, the non-suit was properly refused. As to the second ground of the motion for a non-suit, that, as well as the question whether the Circuit Judge erred in refusing to dismiss the complaint because it did not state facts sufficient to consti-

tute a cause of action, will be considered when we reach the fourth question above stated.

The third general question above stated involves several rulings as to the competency of certain testimony. The first of these rulings, assailed in defendant's second exception, is to that allowing the witness Sparkman, who was the managing partner of the firm of Jervey & Co., to testify as to the amount of money that firm had to their credit in the bank when the check was drawn, the point of the objection seeming to be that the bank or pass book was the best evidence. The "Case" does not show that the objection was based upon that ground, nor does it show that the pass book was called for, and if it had been, probably it would have been produced. Indeed, the "Case" does not show that *any* ruling was made. It simply shows that when Sparkman was asked the question, that an objection was interposed, but upon what ground does not appear. But as witness went on to say that he knew "of his own knowledge" the amount to the credit of the firm, we do not think there was any ground for the objection; for it seems from the case of *Meade* v. *Carolina National Bank*, 26 S. C., 608, reported more fully in 1 S. E. Rep., 419, the pass book is not always the most reliable evidence.

The next ruling as to the competency of the testimony assailed by defendant's third exception is to allowing the same witness to testify as to the contents of a letter; but the "Case" shows that the objection to such testimony was sustained.

The next ruling assailed by defendant's fourth exception is in sustaining plaintiffs' objection to Sparkman's testimony as to why the two deposit accounts were kept separate. The objection was properly sustained, because it was a mere matter of opinion and not the statement of a fact. For the same reason the objection to the statement of Greene, the cashier of the bank, assailed in defendant's sixth exception, was properly sustained. The next ruling assailed in defendant's seventh exception was not objectionable, as it was a simple statement of a fact explanatory of why, in some instances, checks were drawn by Jervey & Co. on the cotton account to

be deposited to the credit of the merchandise account, for the purpose of replacing money taken out of the store, instead of drawn from the bank, to pay for cotton purchased.

The remaining objection to the rulings, as to testimony taken by defendant's eighth exception, is in allowing Mr. McGowan to state that he, as their attorney, had communicated to the plaintiffs the fact that he had learned from the cashier of the bank that Jervey & Co. had money in bank sufficient to meet the check before the action was commenced. Although the objection to this testimony was sustained when first offered, yet it was allowed to come out on the cross-examination without objection, and, therefore, it does not seem to us that the eighth exception can be sustained. Moreover, we do not think the testimony was incompetent, and if there was any error, it was in sustaining the objection in the first instance.

We come next to the fourth question stated above, which involves the most material and important inquiry in the case. It is not to be denied that upon this question—whether the holder of a check on a bank can maintain an action for the amount specified therein against the bank before it is accepted or certified as good by the bank, provided the drawer of the check has funds deposited in the bank to an amount sufficient to meet it when presented for payment—there is very considerable conflict of authority. The cases on the one side and the other of this question may be found collated in Morse on Banks, sections 493–4, where the author expresses a very decided opinion in favor of the affirmative of the question. We need not, however, go into any discussion of these conflicting cases, for we have a decision in this State, in the case of *Fogarties & Stillman* v. *State Bank*, 12 Rich., 518, which, in our judgment, is absolutely conclusive of the question, and we are bound by the authority of that case. In that case it was distinctly held that an action could be maintained by the holder of a check under the circumstances mentioned. The opinion was delivered by that able jurist, Johnstone, J., and we think his conclusion is fully vindicated by his reasoning and the authorities which he cites. It would be idle for us to attempt to add anything to what is there so well said,

and we follow that decision, not only because it is authoritative, but also because it is fully supported by reason.

That case shows, just what the Circuit Judge held in this case, that the true theory is that, when a bank receives the money of a depositor and places the amount to the credit of such depositor on his deposit account, the implied contract on the part of the bank is, that it will pay all checks drawn by the depositor, in such amounts and to such persons as may be mentioned in such checks, as long as there remains to the credit of the depositor on such account an amount sufficient to pay such checks. That case also shows that it is an entire mistake to say, as has been said in some of the cases, that there is no privity between the bank and the holder of the check, for, as we have seen, the contract of the bank is to pay *any person* who may present the check of the depositor, it matters not who he may be. In this respect it is analogous to the case of an ordinary promissory note, payable to a named payee, or order, what particular person may, by the order of the payee, become entitled to receive the money mentioned in the note may not be known to either maker or payee at the time the original promise was made, but no one ever supposed that there was any want of privity, by reason of that fact, between the maker of the note and the person to whom it was endorsed. So here the promise of the bank is to pay to whoever may be named in the check, and, therefore, upon the breach of such promise the person named has a right of action for such breach. But, as we have said, in view of the masterly discussion of this question by Johnstone, J., in the case above cited, we need not pursue the subject further.

It seems to us that the conflict of authority upon this point arises, partly at least, from confounding a check with an ordinary bill of exchange. While it is true that there is a resemblance between these two classes of instruments, there are also radical differences, one of which is that the former need not be accepted, while the latter must be, in order to fix liability on the drawee. As to the difference between these two classes of instruments, see Story on Promis-

sory Notes, section 489; *Bull* v. *Bank of Kasson*, 123 U. S., at page 109.

The fifth question involves the inquiry whether the bank had a right to set up the past due notes of Jervey & Co. and the balance against them on the cotton account. If, as we have seen, the bank received the deposits on the merchandise account under an implied promise to pay the checks of Jervey & Co. on that account as they were presented, then there was an application of that fund to that purpose, and the bank could not afterwards apply the same to any other purpose; certainly not without the consent of, or previous notice to, Jervey & Co. There being testimony to show that it was the long continued habit of the bank to pay such checks notwithstanding the constant balances against Jervey & Co. on the cotton account, as well as the outstanding past due notes, it seems to us that the bank could not depart from such long continued usage and custom, without some notice to Jervey & Co.

As to the sixth question, which arises out of the 9th exception, in which the Circuit Judge is charged with misstating the testimony to the jury. In the first place, such an exception raises no question of law which can be considered, the remedy being by a motion for a new trial in the Circuit Court, or by calling the attention of the judge to the misstatement at the time it is made. *State* v. *Jones*, 21 S. C., 596, which has been followed in numerous cases. In the second place, there was no real mistake in the statement of the testimony, for we do not find any testimony tending to show that any checks were drawn on the cotton account *"to pay* amounts *owing* on the merchandise account." On the contrary, the testimony was that checks were sometimes drawn on the cotton account to *replace* money taken out of the store to buy cotton with.

The seventh question is whether there was error in the instructions to the jury as to the right of the plaintiffs to recover *a part of the amount* of the check. Inasmuch as the verdict of the jury was for the whole amount of the check, with interest, this question loses all practical importance, and need not, therefore, be considered.

The eighth question raises the inquiry as to the instructions given to the jury in regard to the doctrine of estoppel. It seems to us that a bare reading of the charge (which should be incorporated in the report of the case) is quite sufficient to show that there was no error here. Whether the evidence was sufficient to sustain the estoppel, was a question for the jury, and not for us, as there certainly was some evidence upon the subject.

In some of the exceptions, it seems to be intimated that the judge erred in charging on the facts; but after a careful examination of the charge, we are unable to discover a single instance in which the judge even intimated any opinion as to any one of the disputed questions of fact.

The fifteenth exception, as to the agency of the cashier Greene, cannot be sustained. Surely the cashier is the agent of the bank, and the continuing agent, and the testimony as to his admissions that there was a sufficient balance in favor of Jervey & Co. on the merchandise account to pay the check at the time it was presented, was unquestionably binding on the bank.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.