CALLAHAM v. BANK OF ANDERSON.

BANKS—DEPOSITOR—SET OFF.—A depositor has a right of action against a bank for damages resulting from its refusal to pay his check in favor of a third party, in absence of notice to the depositor that bank had applied his funds to his past due obligations to the bank, when he had on deposit sufficient funds to pay the check. *Divided Court.*
*Simmons* v. *Bank,* 41 S. C., 177, *affirmed.*

Before DANTZLER, J., Anderson, October, 1903. Affirmed.

Action by John R. Callaham against Bank of Anderson.

From Circuit order sustaining demurrer to defendant's answer, defendant appeals.

*Messrs. J. N. Brown, J. M. Padget* and *Quattlebaum & Cochran,* for appellant, cite: *Relation between bank and depositor is that of creditor and debtor, and bank may deduct from depositor's account amounts due it:* 45 S. C., 563; Morse on Banks, 4 ed., 289, 324, 325, 329, 330, 337; 2 Ency., 1 ed., 93, 97; 3 Ency., 2 ed., 826, 835, 836; 32 L. R. A., 568; 84 N. Y., 149; 104 U. S., 54; 42 U. S., 235; 179 U. S., 591; 32 S. E., 887; 89 N. W., 1031; 42 N. W., 434; 35 Atl., 792; 66 S. W., 33; 4 Am. St. R., 202; 74 S. W., 699; 55 Am. St. R., 463; 5 Cyc., 550, 552, 553; 41 S. C., 178; 104 U. S., 54; 22 S. E., 1001; 32 S. E., 837; 74 Atl., 699; 120 U. S., 506.

*Messrs. Bonham & Watkins* and *Geo. E. Prince,* contra. The former cite: *What is the doctrine governing banker's lien?* 104 U. S., 701; 3 Ency., 2 ed., 836; 35 N. Y., 338; 1 Morse on Banks, secs. 332, 326, 324; 2 Ency., 2 ed., 838; 2 Lawson's R. & R., 920; 39 L. R. A., 157; 11 L. R. A., 528; 4 L. R. A., 111; 56 L. R. A., 174; 123 U. S., 97. *It has never been held in this State that a bank had such lien or a right of set off:* 7 Rich. L., 136; 12 Rich. L., 518; 41 S. C., 177.

July 8, 1904.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The plaintiff, in his first cause of action, alleges that he was a depositor with the defendant, and drew a check on it in favor of S. F. Royster Guano Co. for $300, which the bank refused to honor, although there were funds to his credit on his deposit account; that he was compelled to take up this check, and by the action of the bank was damaged in the sum of $5,000.

The second cause of action is substantially the same, except the further allegations that he was so seriously in-

jured in his business and reputation as to be compelled to go into bankruptcy.

The plaintiff demurred to the second and third defenses. The second defense is as follows:

"1. That at the time mentioned in the complaint and for some time previous and subsequent thereto, the plaintiff was indebted to the defendant on past due notes both as maker and indorser in a sum largely in excess of the amount which defendant was due to the plaintiff on his deposit account or otherwise.

"2. That the defendant thereby acquired a banker's lien on all deposits of plaintiff and a right to hold and set off any amount due on deposit to plaintiff against the said past due notes, and thereupon defendant held and applied the amount due on deposit account of plaintiff as far as the same would go to the settlement of the said past due notes of plaintiff, and upon this application being made, the plaintiff had no funds left to his credit to meet the check mentioned in the complaint when the same was presented and defendant refused to pay same."

The third defense is similar, except it further alleges the plaintiff's insolvency as a reason for applying his deposits to his indebtedness.

The question in the case is whether the plaintiff has a right of action against the defendant for its refusal to pay a check drawn by him in favor of a third party, in the absence of notice to the plaintiff that the bank had applied his funds on deposit in extinguishment of past due claims held against him by the bank, when he had deposited with the bank sums of money sufficient to meet payment of the draft.

Conceding the general proposition that the relation of debtor and creditor exists between the depositor and the bank, it is necessary in this case to determine whether there are rights and duties, arising from the very nature of the banking business, that are not ordinarily incident to the relation of debtor and creditor.

Such rights and duties are thus stated in *Stillman* v. *Bank,*

2 Rich., 518 : "In the best conducted banking institutions, the well recognized usage is : when a customer deposits funds, the bank is understood to receive them, with a tacit engagement to pay them out to his order or check drawn in his own favor, or in favor of third persons with whom he may have dealings.   This is understood to be the bank's duty and engagement incurred by the simple act of receiving the deposits, as a consideration for its right to employ the money, and which it is to perform, upon the single condition of being notified of the existence of the check, in such manner as to free it from danger of being made liable to pay the same amount twice—that is to say, the checks take precedence according to the order of the notification."   Again, the Court says : "Banks, by going into business, are understood to hold themselves out as having undertaken and assumed upon themselves to be liable for all that that business, in commercial usage, obliges them to do. * * * This bank may, therefore, be considered to have promised Bankcroft, when it obtained the custody of his money, that it would honor his checks by paying out the funds either to himself or to other persons, as his checks might direct.   When a draft under these circumstances comes to the bank, it comes as its own contract, made by it on the consideration of having received funds as the means of its fulfillment; and as between the bank and the holder of the check (when drawn to a third person), Bankcroft is really the bank's agent empowered to give the order.   The contract presented is the original personal promise of the bank itself.   These dealings in bank checks stand upon peculiar grounds.   The exigencies of trade do not admit of delays attending the process of acceptance, or arising from the effect of days of grace.   If these drafts are delayed, if the bank, being in funds, be at liberty to refuse payment, the inevitable consequence to the parties disappointed can be none other than such as the want of scrupulous punctuality always inflicts.   *The drawer's credit suffers; and it is well known that for this injury a depositor is entitled to his action against the bank*" (italics ours).

The reasoning of the Court in the case just mentioned was strongly approved in *Simmons* v. *Bank,* 41 S. C., 177, 17 S. E., 502, which is conclusive of the case under consideration. The Court, in the case last cited, in speaking of the principles decided in *Stillman* y. *Bank,* uses this language: "That case shows just what the Circuit Judge held in this case, that the true theory is that, when a bank receives the money of a depositor and places the amount to the credit of such depositor on his deposit account, the implied contract on the part of the bank is, that it will pay all checks drawn by the depositor, in such amounts and to such persons as may be mentioned in such checks, as long as there remains to the credit of the depositor on such account an amount sufficient to pay such checks." Again, the Court says: "The fifth question involves the inquiry whether the bank had the right to set up the past due notes of Jervey & Co., and the balance against them on the cotton account. If, as we have seen, the bank received the deposits on the merchandise account under an implied promise to pay the checks of Jervey & Co. on that account as they were presented, then there was an application of that fund to that purpose, and the bank could not afterwards apply the same to any other purpose, *certainly not without the consent of, or previous notice to Jervey & Co."* (italics ours).

Permission was granted to review the case of *Simmons* v. *Bank,* 41 S. C., 177, but this Court sees no reason for receding from the principles therein stated.

As the questions raised by this appeal are conclusively settled by our own decisions, we have not deemed it necessary to cite those elsewhere.

The judgment of the Circuit Court is affirmed.

Mr. Chief Justice Pope *concurs.*

Mr. Justice Woods *dissents, and concurs in the dissenting opinion of* Mr. Justice Jones.

MR. JUSTICE JONES, *dissenting.* The plaintiff seeks to recover damages of the defendant bank for alleged wrongful dishonoring of his check in favor of F. S. Royster Guano Co., when plaintiff had on deposit with defendant funds sufficient to pay the same. This appeal comes from an order of Judge Dantzler, sustaining plaintiff's demurrer to the second and third defenses of the answer.

The second defense was as follows:

"1. That at the time mentioned in the complaint, and for some time previous and subsequent thereto, the plaintiff was indebted to the defendant on past due notes both as maker and indorser in a sum largely in excess of the amount which defendant was due to the plaintiff on his deposit account or otherwise.

"2. That the defendant thereby acquired a banker's lien on all deposits of plaintiff, and a right to hold and set off any amount due on deposit to plaintiff against the said past due notes, and thereupon defendant held and applied the amount due on deposit account of plaintiff as far as the same would go to the settlement of the said past due notes of plaintiff, and upon this application being made, the plaintiff had no funds left to his credit to meet the check mentioned in the complaint when the same was presented and defendant refused to pay same."

The third defense is in the same terms, except that it further alleges the insolvency of the plaintiff as a ground for applying his deposits to his indebtedness to the bank.

The sole question presented by the demurrer and this appeal is whether a bank has a lien or right of set off, whereby it may apply a general deposit of its depositor to his past due indebtedness to the bank.

We have no case in this State expressly deciding this question. Respondent's counsel cite *Randolph* v. *Bank,* 7 Rich. L., 136; *Fogarties & Stillman* v. *Bank,* 12 Rich. L., 518, and *Simmons* v. *Bank,* 41 S. C., 177, 19 S. E., 502, in support of the decision of the Circuit Court, but an examina-

tion of these cases will show that they do not decide the question.

In the case of *Randolph* v. *Bank,* Fox had an account against Randolph, and on May 17, 1850, assigned his estate, including said account, to Porter. On May 18, Randolph, in order to pay his debt, purchased of the defendant bank a draft on itself, payable to his order, and indorsed it to Fox, who delivered to the assignee, Porter, who on May 23 presented it to the bank for payment. The bank refused payment, alleging that Fox was their debtor, as drawer of a bill of exchange negotiated with the bank, dated May 11, 1850, and protested for non-payment on May 30, 1850. Randolph, for Porter, assignee, brought action in assumpsit to recover the money paid by him to the bank for its said draft. The Court sustained a judgment for the plaintiff on two grounds: (1) Fox's liability to the bank was not fixed until May 30, after the bank had refused to honor the draft; (2) Randolph had the right in behalf of the assignee to recover the consideration paid the bank for its dishonored draft. It is clear the case was not one in which the bank sought to set off a past due debt, due it by a depositor against his general deposit.

The case of *Fogaties & Stillman* v. *Bank* decides that the holder of a depositor's check on bank has a right of action against the bank upon its refusal to pay, where there are funds on deposit sufficient to pay same, and that the bank could not set off *unmatured* demands against the depositor. The Court expressly declined to give opinion as to whether the right of set off would exist if the bank's demands against the depositor had been due.

The case of *Simmons Hardware Co.* v. *Bank* decides that where a customer kept two deposit accounts in the same bank, one his general merchandise account and the other his cotton business account, and it was the long continued habit of the bank to pay all checks drawn on balances to the customer's credit on the merchandise account, without regard to overdrafts or notes given to cover overdrafts on the

cotton account, the bank could not, without previous notice to the customer, refuse payment of a check drawn by him on funds to his credit on the merchandise account on the ground of his indebtedness by overdraft and past due notes on the cotton account. The language of the Court, at page 190, is: "If, as we have seen, the bank received the deposits on the merchandise account under an implied promise to pay the checks of Jervey & Co. on that account as they were presented, then *there was an application of that fund to that purpose* (italics ours), and the bank could not afterwards apply the same to any other purpose; certainly not without the consent of or previous notice to Jervey & Co. There being testimony to show that it was the long continued habit of the bank to pay such checks, notwithstanding the constant balance against Jervey & Co., on the cotton account as well as the outstanding past due notes, it seems to us that the bank could not depart from such long continued usage and custom without some notice to Jervey & Co."

The peculiar facts bring that case within the principle that when a deposit is made and accepted for a specific purpose, it cannot be diverted to a different purpose without the assent of the depositor. We are now considering the question as it relates to a general deposit, without special circumstances limiting its application.

It is undoubtedly the general rule that a bank is bound to honor the check of its depositor if it has sufficient funds of the depositor to pay the check when presented, because of the implied agreement to do so, arising from the relation of the parties. The ordinary relations between the depositor and the bank is that of creditor and debtor, respectively, to the extent of the deposit, and while the relation so stands, the rule broadly stated above applies; but if, when a check is presented, the relation is altered and the depositor is debtor to the bank on some material obligation upon which the bank would have a right of action against the depositor, then manifestly it is just that the bank should be allowed the right to

set off the past due indebtedness of the depositor against its liability on the general deposit, as if the depositor were then suing the bank on account of the deposit. To hold otherwise would be to deny to a bank the same right of set off accorded to all other persons between whom there exists mutual demands. This right of the bank with respect to general deposits, which is sometimes called a lien, is more accurately the right of set off, for it rests upon and is coextensive with the right to set off as to mutual demands.

The title to a general deposit being in the bank, and the bank as the owner of the money deposited having the right to use it in its business, and being liable to the depositor as a debtor to the extent of the sum deposited, it must follow that a depositor's check upon the fund is not strictly a transfer of the fund deposited, but is rather an assignment, *pro tanto,* of the depositor's right to call upon the bank for payment. The check holder, as assignee of this claim against the bank, has no higher right, as against the bank, than the depositor had, and must hold his check subject to whatever lien, encumbrance or right of set off exists in favor of the bank against the depositor, when it is presented for payment. While under our cases there is such privity between the check holder and the bank as will authorize an action by the check holder against the bank upon presentation of the check and refusal of payment when there are funds sufficient to pay the same—*Leaphart* v. *Bank*, 45 S. C., 569, 23 S. E., 939—still the check holder's right must be limited by the bank's prior right of set off against the depositor. If the depositor were suing to recover the amount deposited, clearly the bank, under section 171 of the Code of Civil Procedure, would have the right to counter-claim the past due indebtedness of the depositor, and even if the check holder for value were suing to recover of the bank the amount of the check, because it operated as an assignment, *pro tanto,* of the depositor's claim against the bank, the action, under section 133 of the Code of Civil Procedure, would be without prejudice to any set off or other defense existing at the time of or before

notice of the assignment. This last section, it is true, does not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration before due; but a check is not a promissory note, and, while it may have some points of resemblance to a bill of exchange, it is not a bill of exchange—*Simmons* v. *Bank,* 41 S. C., 189, 19 S. E., 502—certainly not as against the bank until it has made itself an unconditional party thereto by acceptance or certification. Until such acceptance, the bank's liability to the check holder is conditional on there being in his hands sufficient, unencumbered or unappropriated funds, to pay same when presented. What would be good as a set off in a direct action upon the contract of deposit must constitute a good defense in an action for damages based upon a breach of such contract. Some authorities hold that the deposit account should be exhausted before the check is presented, by charging the account with the depositor's past due indebtedness, as in *Bank of Marysville* v. *Browning Co.* (Ohio), 40 Am. St. Rep., 660; *Niblack* v. *Park Nat. Bk.* (Ill.), 61 Am. St. Rep., 203, 39 L. R. A., 157. If this be the correct view, and there is much to commend it, it is met by the allegation in the answer that the deposit account was so changed and exhausted when the check was presented. The rule that a bank has a right to set off the material indebtedness of a depositor against a general deposit account, and to decline to pay the depositor's check when there is not sufficient unincumbered or unappropriated funds of depositor, is supported by many authorities, among which, in addition to those already cited, are the following: Morse on Banking, 4th ed., sec. 324; 3 Ency. Law, 2d ed., 835, and notes; 5 Cyc., 550, and notes; *Harrison* v. *Harrison* (Ind.), 4 L. R. A., 111; *Wood* v. *Boylston Nat. Bank,* 129 Mass., 358, 37 Am. Rep., 366; *Falkland* v. *Bank,* 84 N. Y., 145; *Hodgin* v. *Bank* (N. C.), 32 S. E. Rep., 887; *Gibbons* v. *Hecox* (Mich.), 55 Am. St. Rep., 463; *First Nat. Bank* v. *Peltz* (Pa.), 53 Am. St. Rep., 687; *Slack* v. *N. W. Nat. Bank*

(Wis.), 74 Am. St. Rep., 844; *Metropolis Bank* v. *New England Bank,* 1 How. U. S., 234.

As a matter of course, a bank may so deal with a depositor as to waive, or be estopped to assert this lien or right of set off, as in *Simmons* v. *Bank, supra,* where it was shown that the long continued course of dealing between the parties was inconsistent with the assertion by the bank of the right to set off past due indebtedness with respect to the "cotton account" against a deposit accepted as applicable to the "merchandise account." Circumstances tending to show waiver of or estoppel to assert such right may be shown in reply to the defense alleging the right.

From what has been said, it must follow that the right of set off applies also when the indebtedness of the depositor is as indorser or surety—provided, of course, such liability is fixed, and such several, mutual demands exist, as will bring the cross demands within the ordinary rules of set off.

We think, therefore, that the Circuit Court erred in sustaining the demurrer to the second defense.

With respect to the third defense. Insolvency of the depositor is not material in determining the right of the bank to set off *past due* indebtedness of the depositor. It might be an important consideration if the defendant were not attempting to avail itself of an equitable right of set off with respect to debts *not due;* but no such question is presented, and we express no opinion thereon. Even if the third defense is redundant because not materially different from the second defense, it is not demurrable for insufficiency, for the reasons stated.

Entertaining the foregoing views, I vote for a reversal of the judgment of the Circuit Court, but inasmuch as this Court is equally divided in opinion on this question, the judgment of the Circuit Court stands affirmed.