### 6580

### LIVINGSTAIN v. COLUMBIAN BANKING AND TRUST CO.

SUBROGATION—BANKS.—Where an insolvent bank draws a draft to pay a deposit on a bank in which it had on deposit the proceeds of a note secured by collateral, the note providing in case of insolvency of maker bank, it should become due at once and the note could be charged to the account and the collateral sold and applied to the debt, upon notice of insolvency of maker, the drawee bank so charged the note, refused to pay the draft, and turned over the collateral to receivers of insolvent bank, the holder is not entitled to be subrogated to rights of drawee bank in collateral as against general creditors of drawer bank.

MR. JUSTICE GARY *dissents.*

*Garvin* v. *Bank,* 7 S. C., 266, *distinguished from this.*

Before ALDRICH, J., Charleston, July, 1906.    Reversed.

Harris Livingstain, petitioner. *In re* Harris Livingstain against Columbian Banking and Trust Co. From Circuit decree receivers, E. W. Hughes and B. A. Hagood, appeal.

*Mr. Benj. Rutledge,* for appellant, cites: 74 S. C., 210; 7 S. C., 266; 16 Pa. St., 448; 2 Waits, 206; Adams' Eq., Par. 272.

20—77

*Mr. W. A. Holman,* contra, oral argument.

The opinion on this case was first handed down on March 27, 1907, but on petition for rehearing it was ordered reargued at April Term, 1907.

July 9, 1907. The opinion of the Court was delivered by

Mr. Justice Woods. The Columbian Banking & Trust Company of Charleston, afterwards to be referred to in this opinion as the Columbian Bank, on January 5th, 1906, gave its promissory note to the National Bank of Commerce of New York, afterwards to be referred to as the Bank of Commerce, for five thousand dollars, due ninety days after date. Certain bills receivable were deposited as collateral, but no overdrafts were to be allowed and the collateral was to secure the note only. The note provided that upon certain contingencies, such as failure of the Columbian Bank, the National Bank of Commerce should have the right immediately to declare the note due and to sell the collaterals and apply the net proceeds of the sale to the payment of the note, and that any money on deposit at the National Bank of Commerce belonging to the Columbian Bank might, at the option of the National Bank of Commerce, be held and treated as collateral security and set off against the said note.

On February 8th, 1906, the Columbian Bank had to the credit of its account in the Bank of Commerce fifty-one hundred thirty-four dollars and forty-three cents. On the same day M. K. Berger and Harris Livingstain, having on deposit in the Columbian Bank two thousand fifteen dollars and seventy-five cents and twenty-six hundred dollars, respectively, presented checks for the full amount of their deposits and the bank, being without cash, gave them in payment checks or drafts on the Bank of Commerce. The Columbian Bank was in fact insolvent when these checks were given, and later in the day suspended payment. The checks were presented for payment on February the 10th,

1906, but were refused, because the Bank of Commerce exercising the right contracted for in the note in case of insolvency of the Columbian Bank, had charged the whole of the five thousand dollar note to the account of the Columbian Bank, thus paying its note and reducing its credit balance to three hundred and fourteen dollars and forty-three cents. E. W. Hughes and B. A. Hagood were appointed receivers of the Columbian Bank, and the Bank of Commerce turned over to them the cash balance of three hundred fourteen dollars and forty-three cents and the collateral notes held to secure the five thousand dollar loan. Thereupon Berger and Livingstain filed their petition, claiming under the doctrine of subrogation the right to stand in the place of the Bank of Commerce, and to be paid from the cash and collateral surrendered to the receivers. The master, Mr. Sass, reported the petitioners entitled to the cash balance of three hundred fourteen dollars and forty-three cents, but denied their right of subrogation as to the collateral. The Circuit Judge, Hon. James Aldrich, reached a different conclusion, and held the petitioners entitled in equity to the payment of the dishonored checks from both the cash and the collateral turned over by the Bank of Commerce to the receivers. We think, with the master, that subrogation should not be allowed, because it would be prejudicial to the other depositors of the Columbian Bank, whose equitable right to equal distribution of the assets among creditors is clearly superior to any claim set up by the petitioners to the collateral.

The checks given to the petitioners in payment of their deposits operated as assignments *pro tanto* of the balance to the credit of the Columbian Bank in the hands of the Bank of Commerce. *Fogarties & Stillman* v. *State Bank,* 12 Rich., 518; *Simmons* v. *Bank,* 41 S. C., 189, 19 S. E., 502; *Loan & Savings Bank* v. *Farmers & Merchants Bank,* 74 S. C., 210. But the legal assignment of the deposit to the petitioners, evidenced by the checks, was subject to the prior assignment of the deposit to the Bank of Commerce, which was conditional on the insolvency of the Columbian Bank.

·When the condition of the prior assignment was fulfilled by the insolvency of the Columbian Bank, and the deposit was rightfully appropriated by the prior assignee, any legal right of the petitioners under their assignment was as completely gone, except as to the balance of three hundred and fourteen dollars, as if the deposit had been paid out on another check presented at the counter of the Bank of Commerce.

This statement of the legal relation of the parties to the deposit is self-evident. For there is no basis in reason or authority for the position taken in argument, that the Columbian Bank could not contract with the Bank of Commerce that the money held by the Bank of Commerce to the credit of the Columbian Bank should be applied to its note. The cases in this State give no countenance to such a proposition. The extent to which the Court has gone is thus correctly stated in the syllabus of *Callahan* v. *The Bank,* 69 S. C., 374, 48 S. E., 293 : "A depositor has a right of action against a bank for damages resulting from its refusal to pay his check in favor of a third party, in absence of notice to the depositor that bank had applied his funds to his past due obligations to the bank, when he had on deposit sufficient funds to pay the check." The decision in that case is rested on an implied contract that the bank will hold the deposit to be paid out on checks of the depositor. Mr. Justice Gary quotes with approval the language of Chief Justice McIver in *Simmons* v. *Bank,* 41 S. C., 177, saying: "The Court in the case last cited, in speaking of the principles decided in *Stillman* v. *Bank,* uses this language: 'That case shows just what the Circuit Court held in this case, that the true theory is, that when a bank received the money of a depostior and places the amount to the credit of such depositor on his deposit account. the implied contract on the part of the bank is, that it will pay all checks drawn by the depositor, in such amounts and to such persons as may be mentioned in such checks, as long as there remains to the credit of the depositor on such account an amount sufficient to pay such checks.' Again the Court says: 'The fifth ques-

tion involves the inquiry whether the bank had the right to set up the past due notes of Jervey & Co., and the balance against them on the cotton account.  If, as we have seen, the bank received the deposits on the merchandise account under an implied promise to pay the checks of Jervey & Co. on that account, as they were presented, then there was an application of that fund to that purpose, and the bank could not afterwards apply the same to any other purpose, certainly not without the consent of, or previous notice to Jervey & Co."

Neither this case nor any other affords the slightest ground for imputing to the Court an intention to deny to a depositor the right to make an express contract with the bank that his deposit account shall be applied to his debts to the bank or to any other legitimate purpose.

Such a restriction upon the right of an individual to contract with respect to his property would hardly be attempted by any Court.

The prior assignment of the deposit account and its application to the note of the Columbian Bank before notice to the Bank of Commerce, of the checks held by petitioners, completely defeated any legal right which the petitioners would have had but for the prior assignment and application of the funds.

The claim to the collateral held by the Bank of Commerce is therefore unsupported by any legal right, and rests entirely on the assertion of the equity of subrogation.

Although this assignment became ineffective because of the superior claim of the Bank of Commerce, yet when that bank paid the debt owing to it with a fund on which the petitions had a junior lien or claim, as against the Columbian Bank and the Bank of Commerce, petitioners would have ordinarily a right, on the principle of subrogation, to be substituted for the Bank of Commerce as pledgee of any collaterals held by it.  This general principle is so obvious and well recognized that it requires no extended discussion. *Gadsden* v. *Brown,* Speer's Eq., 41; *Ex parte Reynolds,* 68

S. C., 438; 47 S. E., 728; *Hutchinson* v. *Fuller*, 67 S. C., 480, 45 S. E., 164; *Rice* v. *Bamberg*, 72 S. C., 384; *American Bonding Co.* v. *National Bank*, 99 Am. St., 467, note; *Winston* v. *Biggs*, 2 Leading Cases in Equity, 420, note.

But the issue here is not between the petitioners and the Bank of Commerce or the Columbian Bank as a solvent institution, able to pay all creditors; it is between the creditors of the Columbian Bank, an insolvent institution, and the petitioners who are claiming a preference in the distribution of the assets.

No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors. Against this equity, there is no principle of subrogation which can avail petitioners.

The case of *Wyman* v. *Fort Dearborn National Bank* (Ill.), 48 L. R. A., 566, is cited in the circuit decree and in argument here, as a case in which a check holder was subrogated on precisely the same facts. But the report of that case does not show the important fact, which here appears, that the check holder took the check from an insolvent corporation in payment of its debt due him as a depositor, and not for money paid at the time. The case of *Garvin* v. *Bank*, 7 S. C., 266, does not support petitioner's claim. There the check holders were held entitled to subrogation, after the payment of the bank's debt from the bonds deposited as security, but the contract between the Royal Bank of Liverpool and the State bank which issued the checks expressly provided for overdrafts, while here overdrafts were not to be allowed. The vital distinction, however, is in that case the drafts were made when the bank was solvent, and it does not appear they were issued for a debt, the payment of which would have operated to prefer the payee to other creditors of an insolvent.

"The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice." *Gadsden* v. *Brown, supra.* As has often been said, it

does not flow from any fixed law, but from principles of justice, equity, and benevolence. *Cheeseborough* v. *Mollard,* 1 Johnson's Ch., 409. Obviously, therefore, subrogation will not be decreed in favor of one when it would defeat a legal right or overthrow an equal or superior right of another. *Ex parte Reynolds, supra,* 99 Am. St., 480 and 502. That it would have this effect here is very clear. The Columbian Bank issued checks to pay two depositors when it was insolvent and owing a large number of other depositors. Had its condition been known, the court of equity, before the checks were signed, on the application of any creditor, would have taken charge of all of the assets, and its main purpose in doing so would have been to prevent any preference among creditors and secure a distribution *pro rata* among all. This was an equity to which all creditors were entitled at the moment of insolvency, before the checks were issued to petitioners, and, therefore, the equity of equal distribution was superior in point of time to any alleged equity of subrogation.

If embodied equity could have stood at the counter of the Columbian Bank, by its mandate it would have forbidden the issuing of the checks; and by its hand, it would have taken possession of the assets, including the collateral in the hands of the Bank of Commerce, to the end that the assets should be equally distributed among creditors and that none should have preference. How then can the court of equity be asked today to use its power to accomplish that which yesterday it would have used its power to prevent as inequitable and unjust?

Therefore, the issuing of the checks to these depositors was inequitable with respect to other depositors, because the bank was actually then insolvent and all of the depositors had the equity of equal distribution of the assets, including any surplus arising from the collateral held by the Bank of Commerce. The right of the Columbian Bank is not in question, and with that the Court will not interfere, but it is very clear that the Court should not

stretch out its arm and by affirmative action, under the guise of subrogation, confer on the petitioners a lien on the collateral, thus defeating equitable distribution among all of the creditors to promote an inequitable preference. Had the checks been issued for cash paid into the bank or before insolvency, the other depositors could have interposed no countervailing equity, and the petitioners would have been entitled to subrogation. But the insuperable objection to subrogation in the case, as presented, is the fact that the checks were issued in payment of the debts of the bank after insolvency, and when the Court, at the very moment they were issued, would have taken charge of the bank's assets, and would have enjoined the issuing of the checks to the end that an equal distribution should be made among creditors without preference to any.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the report of the master be confirmed.

MR. JUSTICE GARY *dissents and thinks the decree of the Circuit Court should be affirmed for the reasons therein stated.*