6694

## BANK OF SPARTANBURG v. MAHON.

DEBTOR AND CREDITOR—BANK.—If one creditor and a bank, also a creditor, and their debtor agree that debtor shall sell *his* stock of goods and the proceeds should be applied, first to certain notes held by the bank, endorsed by the creditor, and the balance prorated between an overdraft due the bank and a debt due the creditor, the bank cannot escape its promise to so apply the money, if it came under its control; but where the debtor sold the goods and deposited the money in bank in his name—neither the bank nor the creditor having any interest in, or control of, or lien upon the goods—the fund never came under its control and it is not liable to the creditor for the fund not being applied as agreed upon.

Before WATTS, J., Greenville, November, 1906. Affirmed.

Action by Bank of Spartanburg against G. H. Mahon. From judgment for plaintiff, defendant appeals.

*Mr. Jos. A. McCullough,* for appellant, cites: 45 S. C., 373; 66 N. Y., 271; 27 Ency., 516, 520; 51 S. C., 127; 69 S. C., 374; 3 Ency., 838; 97 Ky., 154; 40 Am. R., 244; 3 Strob. Eq., 64; 1 DeS. Eq., 322; 39 S. C., 333; 11 S. E. R., 135; 21 At. R., 21; 105 Pa. St., 496.

*Messrs. Simpson & Bomar* and *M. F. Ansel,* contra. The former cite: *Simmons* v. *Bank,* 41 S. C.; *Callahan* v. *Bank,* 69 S. C.

October 26, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Bank of Spartanburg, as indorsee and holder, brought this action against G. H. Mahon, as indorser on three promissory notes. On the first trial of the cause, the Circuit Court granted a nonsuit, holding that Mahon was never liable on the notes. This Court held otherwise, and reversed the judgment. 75 S. C., 255. On the second trial the sole issue was whether the plaintiff bank had come into possession or control of funds of the principal debtors, James & Stewart, which it should have applied to the payment of the notes. The Circuit Judge held there was no evidence to support defendant's contention, and instructed the jury to find a verdict in favor of the plaintiff for the amount claimed. The exceptions charge error in this instruction. In stating the material facts, the defendant's version of those in dispute must be taken; for, if there was any evidence from which the jury could have found the bank had control of the funds which it sought to have applied to the payment of the notes in suit, then it was error to direct a verdict for the plaintiff.

In the spring of 1904 James & Stewart, a firm doing business in the city of Spartanburg, owed Bank of Spartanburg notes, aggregating ten thousand two hundred dollars, indorsed by defendant, Mahon, who lived in Greenville, and also an unsecured overdraft of about four thousand dollars. At the same time the firm owed Mahon an unsecured debt of ten thousand dollars. In April Mahon had a conference with James, one of the partners, and Boyd, the cashier of the Bank of Spartanburg, at which it was agreed, as Mahon testified, the stock of goods of James & Stewart should be sold and the proceeds of the sale first applied to the payment of the notes indorsed by Mahon, and the surplus, *pro rata,* to the overdraft due the bank and the debt due Mahon. These are the words in which Mahon states the agreement: "It was in Mr. James' store, and Mr. Boyd was there. And it was agreed that we should sell the stock of goods, and several parties' names were mentioned that would probably buy the stock of goods, and these notes which I was indorser on were to be paid off, and then the surplus was to be prorated to the overdraft and to my individual notes, to share and share alike."

Early in May, 1904, James & Stewart sold the stock of goods for ten thousand three hundred and sixty-six dollars and fifty-three cents, and James deposited the whole sum to the credit of the firm in Bank of Spartanburg. The overdraft at this time was three thousand three hundred and thirty-eight dollars and eighty-three cents, so that, after the deposits, there was a balance to the credit of James & Stewart of seven thousand twenty-seven dollars and seventy-one cents. This balance James & Stewart immediately checked out, one of the checks being in favor of the bank for four thousand nine hundred and fifty-five dollars, to be applied to the notes on which Mahon was liable as indorser. After payment in full of several of the notes indorsed by Mahon, nine hundred and seventy-one dollars and thirty-five cents, the remainder of the check, was applied as a payment on one of the notes in suit. The con-

tention of the defendant is, that under his alleged agreement with the bank and James & Stewart, when James deposited the proceeds of the stock of goods, the bank was in control of the deposit and was bound to apply the whole sum to the payment of the indorsed notes.

There is no doubt of the soundness of the defendant's position, that a perfect moral obligation is in this State a sufficient consideration to support a contract. *McMorris* v. *Herndon,* 2 Bail., 56; *Ferguson* v. *Harris,* 39 S. C., 333, 17 S. E., 778. It is no less true, that a surety or accommodation indorser has the right to require the creditor to account for the value of any collateral held for his protection and released or misapplied to his prejudice. The issue is, whether these principles are available to the defendant under the evidence. It is to be observed, neither the bank nor Mahon had any interest in the goods, or any lien on them, or any control over them. If there was an agreement for the sale of the goods, it must, therefore, be treated as the undertaking of James & Stewart alone, for, being the absolute owners in exclusive possession, they alone could sell. So, also, after the sale, the purchase money was in the absolute control of James & Stewart. Hence, it is manifest that, up to the time the proceeds were deposited, the bank and Mahon were free from all responsibility to each other for the sale of the goods or the application of the proceeds.

If we assume the bank had control of the fund after it was deposited, then there was a sufficient consideration to support its promise to apply it according to the agreement. The evidence of Mahon presents this condition of affairs. A mercantile firm in failing circumstances; two creditors anxious about their debts and seeking payment from assets inadequate for the payment of both; a meeting of these creditors with the debtor, and the consideration of the disposition of the stock of goods—usually the most important source of payment; an agreement for the conversion of this asset into money to be paid to one creditor, who agrees to

apply it to the debts in certain proportions. Is it not evident there is a sufficient valuable consideration for the contract of the creditors with each other, in that each creditor has changed his position and altered his chances of obtaining payment from the visible assets of the debtor, on the faith of the promise of the other? Is it not more evident that it would be a fraud on the part of the creditor authorized to receive and apply the proceeds of sale, to apply the whole amount realized to his own debt, to the exclusion of the debt of the other, in violation of his agreement? In this case, it is true, the arrangement which Mahon says was made seems a foolish one on the part of the bank, inasmuch as the fund to be realized from the sale of the goods was to be applied first to a debt already secured by Mahon's indorsement. That fact might tend to support the statement of Boyd, the cashier, that no such agreement was made; but if the agreement was made, its validity could not be impaired by the fact that the bank made a bad bargain. We think, if the agreement was made, and the fund derived from the sale came under the control of the bank, it could not escape its promise to apply the money first to the notes indorsed by Mahon, for lack of consideration for its promise.

But, under the law of this State, the fund never came under the control of the bank. As to James & Stewart, it seems clear there was no consideration, either legal or moral, upon which the agreement could rest. There was no contract for extension, nor any stipulation which could possibly be a benefit to them, nor was there any surrender by the other parties of any right or claim against James & Stewart. True, they were under a moral obligation to apply their assets to the payment of their debts, but that obligation was not for a preferential but an equal distribution. Hence, when the fund was deposited to their credit, there was not in existence a contract binding on them by virtue of which the bank could, without their consent, apply

the deposit to the indorsed notes. In this the case differs from *Livingstain* v. *Columbian B. & T. Co.,* 77 S. C., 305.

The deposit made by James & Stewart was, therefore, subject to their exclusive control, and the bank was bound to pay their checks on it until the account no longer showed anything to their credit. This the bank did, and the defendant has no valid claim to credit for funds which the bank could not control.

The only note indorsed by Mahon which had matured was paid by James & Stewart out of the deposit. While there has been difference of judicial opinion in this State as to the right of a bank to apply the balance of a deposit account to matured notes of a depositor held by the bank, it has never been doubted a depositor's consent is necessary before a bank can apply funds deposited, subject to check, to a depositor's unmatured notes. *Fogarties & Stillman* v. *Bank,* 12 Rich., 518; *Callahan* v. *Bank,* 69 S. C., 374, 48 S. E., 293.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.