DAVIS BROS. & POTTER, A Common Law Trust, Appellant, v. FORT DODGE NATIONAL BANK et al., Appellees.

No. 41848.

JUNE 20, 1933.

John M. Schaupp, for appellant.

Gray & Gray, for appellee L. A. Andrew.

ALBERT, J.—At all times involved herein, the plaintiff was engaged in the general grain business and operated an elevator at Manson, Iowa. One Emma Schaupp, a resident of Fort Dodge, Iowa, was the owner of certain grain which was sold to plaintiff's elevator, and on the 24th day of September, 1931, said grain was paid for by a check drawn on the Farmers Savings Bank by the said plaintiff in the sum of $514.61. This check was duly indorsed to the Fort Dodge National Bank in payment of a note owed by Emma Schaupp to said national bank on the 25th day of September, 1931, and on the same day the Fort Dodge National charged the same to the account of the Manson bank, which had sufficient money on hand to meet the same and forwarded the same, with other checks, to the Manson bank, together with a remittance letter. They reached the Manson bank on the morning of September 26th, and this check was not charged to the account of the plaintiff in the Manson bank, although there was more than enough money in its account to pay the same.

The Manson bank did not open on the morning of September 27th, and on September 28th, Andrew, superintendent of banking, was appointed receiver thereof. After taking possession of said bank, Andrew found this check and remittance letter, together with certain other checks, and immediately returned the same to the Fort Dodge National, who credited this check back to the account of the Manson bank, and called upon Emma Schaupp, as indorser, to make the same good. This was done, and the check was returned to Mrs. Schaupp. She then presented the same to the plaintiff and received from plaintiff the aforesaid sum of $514.61.

The evidence satisfactorily shows that there was an agreement between the Manson bank and the Fort Dodge National Bank that all checks drawn on the Manson bank and received by the Fort Dodge National Bank were to be paid from the depository account of the Manson bank in the Fort Dodge bank, which agreement had existed for many years. It was also a part of the understanding between these parties that, if checks drawn on the Manson bank came into the hands of the Fort Dodge National Bank, the Fort Dodge bank would promptly forward the same to the Manson bank, and, if there were no funds to meet the same, or if, for any other reason the Manson bank did not wish to honor the check, the Manson bank would promptly wire the Fort Dodge bank of such refusal. This was not done as to the check in controversy herein.

The facts so far are not seriously disputed.

After this check was taken up by the plaintiff from the Schaupps, plaintiff instituted this action seeking to hold an amount equivalent to said check from the funds in the hands of the Manson bank in the Fort Dodge bank. Andrew, receiver, defends, claiming that he, as such receiver, is entitled to all of the funds in the hands of the Fort Dodge National Bank, and plaintiff is not entitled to any part thereof.

Many cases of this court are cited by the respective counsel on their contentions herein, but we fail to find any which apply to this exact situation. It is settled that the relation between the Manson bank and the Fort Dodge National Bank was that of debtor and creditor. Leach v. Battle Creek Savings Bank, 202 Iowa 871, 211 N. W. 519.

It is also settled that the title to this check passed by indorsement to the Fort Dodge National Bank, and it was a holder for value when it accepted the check as payment of the payee's note. Acme Hay & Mill Feed Co. v. Metropolitan Nat. Bank, 198 Iowa 1337, 201 N. W. 129.

The receiver of the Manson bank had no greater rights than the bank itself had, and the choses in action of said bank passed to the receiver, subject to any right of set-off at the time of his appointment. Brown v. Sheldon State Bank, 139 Iowa 83, 117 N. W. 289.

We have also announced the rule that the Fort Dodge National Bank had the right to set-off by charging this check to the Manson bank deposit under the agreement between the parties. Leach v. Battle Creek Savings Bank, supra; Thomas v. Exchange Bank of Angus, 99 Iowa 202, 68 N. W. 780, 35 L. R. A. 379; Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728.

None of these cases, however, reach the exact question we have before us. The Battle Creek Savings Bank case, supra, is a typical case, and in that case, if not in most of these cases, the litigation was between the two banks, and, had the receiver of the Manson bank not returned the check to the Fort Dodge National Bank and the subsequent transaction had not occurred, plaintiff's authority cited would be applicable to the situation; but, when the receiver of the Manson bank returned this check to the Fort Dodge National Bank, and it was credited to the Manson account, Emma Schaupp,

by reason of her indorsement, took up the same and paid the bank money therefor, so that, at this point, all interest of the Fort Dodge National Bank ceased so far as this check was concerned. The Schaupps in turn returned the check to the plaintiffs who took up said check and paid the Schaupps the face thereof, and, at that point, the Schaupps ceased to be interested in the transaction, and the plaintiff was then in possession of the check which they had formerly issued.

It is admitted in the record that, at the time of the trial, there was over $5,000 in the deposit account of the Manson bank in the Fort Dodge National Bank, and from this plaintiff seeks to recover the amount of said check. Of course, whatever funds there were in the Fort Dodge National, at the time Andrew was appointed receiver, automatically passed into the receivership. Plaintiff has not suggested, and we have been unable to discover, any theory of law by which it could reach these funds in the hands of the Fort Dodge National Bank. It is not suggested by counsel that any relation of principal and agent existed between the plaintiff and the Fort Dodge National Bank, and there is nothing from which it may be logically held that, because of this transaction, a preference was given or a trust fund created in the hands of the Fort Dodge National Bank for the benefit of the plaintiff.

Plaintiff insists that, by reason of the agreement existing between the Manson bank and the Fort Dodge National Bank, some benefits arise in its favor. Had the Fort Dodge National Bank stood on its rights as against the Manson bank and refused to credit the check back, this agreement might then be involved, and possibly in the end might inure to the benefit of the plaintiff; but the Fort Dodge National Bank did not avail itself of whatever rights it had in this relation, but waived the same by its conduct, and whatever right it or the Schaupps may have had under this agreement between the two banks was equally waived by them. The chain is therefor broken (if one existed), and the plaintiff has no rights or remedies that we can discover as against the Fort Dodge National Bank to the fund of the Manson bank and its receiver.

The record shows that, without prejudice to the rights in this case, the plaintiff has filed its claim with the receiver covering this check, and recovery by it must be had, if at all, by way of the

allowance of its claim in the receivership and the dividends it receives thereon.—Affirmed.

KINDIG, C. J., and EVANS, STEVENS, DONEGAN, KINTZINGER, and CLAUSSEN, JJ., concur.