CALMENSON CLOTHING CO., Appellant, v. FIRST NATIONAL BANK AND TRUST CO., Respondent.

(258 N. W. 555.)

(File No. 7717. Opinion filed January 24, 1935.)

*E. B. Harkin,* of Aberdeen, and *John A. Burns* and *Maurice W. Stoffer,* both of St. Paul, Minn., for Appellant.

*Fletcher & Fletcher* and *Williamson, Smith & Williamson,* all of Aberdeen, for Respondent.

ROBERTS, J. This is an action by the Calmenson Clothing Company to recover damages of the First National Bank & Trust Company of Aberdeen for the refusal by the bank to honor certain checks drawn on it by the plaintiff against a deposit subject to check. At the close of plaintiff's case defendant moved for a directed verdict. This motion was granted by the court, verdict

rendered as ordered, and judgment for costs entered against the plaintiff. Plaintiff assigns this ruling of the court as error.

The evidence disclosed that the plaintiff was engaged in the retail clothing business in Aberdeen; that Sam Calmenson was the president of the clothing company; that F. D. Stiles was the president of defendant bank; and that plaintiff for a period of time had been a depositor and borrower at both the defendant bank and the Aberdeen National Bank of Aberdeen. On January 26, 1933, plaintiff delivered to defendant its promissory note for $4,150, due in ninety days, and conferred by the terms of the note authority upon the holder to apply any money "on deposit with the holder, or which may be in the holder's possession, toward the payment of said note or other demands or obligations of the undersigned to the holder, whether due or not." On January 30, 1933, plaintiff's stock of merchandise was damaged by fire, and for the alleged purpose of avoiding delay which might occur from a threatened garnishment proceeding plaintiff made an assignment of insurance claims to a creditor and an adjuster employed by the plaintiff to secure adjustments on its fire insurance policies. Shortly thereafter a conference was had between Calmenson and officers of both banks. Calmenson then admitted that an assignment had been made and represented that the clothing company would receive a sufficient amount from the proceeds of its fire sale to pay most of its creditors, but in any event the money to be derived from insurance claims would pay obligations held by the banks. In explanation of the necessity for further credit, Calmenson testified that the national bank holiday in March, 1923, prevented plaintiff from realizing anticipated receipts from the fire sale, that the plaintiff company intending to engage in the clothing business at its former location ordered a new stock of merchandise for delivery during April, and that to obtain a discount it was necessary to pay for such merchandise on or before the tenth of the following month. On April 27, the due date of plaintiff's note at the defendant bank, payment of $1,000 was made on the note, and Calmenson testified that on this occasion he negotiated with Stiles for a line of credit of $2,500; that Stiles said: "All right, Sam, we will take care of you. Bring over a copy of your financial statement." A statement was prepared by the secretary of plaintiff company and furnished to the bank.

On May 8, 1923, plaintiff deposited $3,000 of its insurance proceeds with defendant bank and drew checks against this deposit in payment of merchandise. Calmenson testified: "These checks were drawn on or about May 9th and May 10th, the dates they bear. After the checks had been drawn, and on the 10th day of May, Mr. Stiles visited me in my place of business. That was after these checks I have identified were mailed and sent out. I had a conversation with Mr. Stiles at that time on the main floor of my building. Mr. Stiles came in the store, we passed the time of day—visited for a few minutes, and he said, 'Sam, how would you like to give me a check this morning for eleven hundred and seventy some dollars and some cents?' And I said, 'I haven't got any money.' 'Why,' he said, 'yes, you have got a nice balance over there at the bank.' I said, 'No, Mr. Stiles, I haven't got a dollar over there, I issued checks for all the money I have got there, to pay my invoices.' I said, 'What's the matter? About two weeks ago you gave me a line of credit for $2,500 and now you come in and want to reduce it to $1,500.00. * * * You know I made arrangements for this line of $2,500.00. As I told you, I had a lot of bills to pay on May 10th, and these checks were sent yesterday in the mail.' He listened to the conversation, and then backed away and waved his hand and left the store. * * * He did not ask me to pay the full amount." On May 11, the defendant bank charged the balance due on the note to plaintiff's deposit account and notified plaintiff by letter of this fact and inclosed the canceled note. Plaintiff entered the amount of the note as paid on its records. Calmenson further testified: "On the day I received the letter * * * I had a further conversation with Mr. Stiles in the First National Bank and Trust Company. * * * I said, 'Just what's happened here? Two weeks ago you gave me a line of $2,500.00. Yesterday you came over to the store and wanted to reduce it to $1,500.00, and this morning you charge the whole note to my account, and I told you yesterday that we issued all these checks, and haven't got a dollar in the bank, Stiles, and you are putting me in an awful hole. * * * You granted me a line of credit; it isn't due, but,' I says, 'all right, Mr. Stiles, I will agree to this form of paying the note if that is the way you want to collect it, you have got your money now. Now let me have the new line of credit.' I said, 'These checks are out and I have got to

protect them. * * * In the conversation with Mr. Stiles, I mentioned that I was going to Minneapolis.' * * * I went to Minneapolis and collected the balance of the insurance, $3,275.00."

The defendant bank paid the checks first presented, and its records showed an overdraft of $841.10. Other checks were dishonored and returned to the holders for want of funds. Protests were made in the usual manner. The payees were wholesale merchants, and evidence was submitted tending to show injury to plaintiff's credit among wholesalers of the varieties of merchandise purchased by plaintiff.

■ A bank is bound to honor checks drawn on it by a depositor if it has sufficient funds belonging to the depositor when the checks are presented and the funds are not subject to any lien or claim, and for its refusal or neglect to do so it is liable in an action by the depositor. Schaffner v. Ehrman, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 134, 32 Am. St. Rep. 192; Rolin v. Steward, 14 C. B. 595; Peabody v. Citizen's State Bank, 98 Minn. 302, 108 N. W. 272; Wiley v. Bunker Hill Nat. Bank, 183 Mass. 495, 67 N. E. 655; State Bank v. Marshall, 163 Ark. 566, 260 S. W. 431, 34 A. L. R. 202; Morris, Banks and Banking, § 458.

The answer sets up the defense that plaintiff was indebted to the defendant upon its promissory note which was due and unpaid, that the defendant bank on May 11, 1933, charged to the deposit account of the plaintiff the balance due upon the note and immediately notified the plaintiff, and that the balance remaining due the plaintiff upon its deposit account after the indebtedness was paid was shortly thereafter exhausted by the plaintiff without an arrangement for a further extension of credit.

■ Plaintiff authorized by the terms of the note the defendant bank to apply any money on deposit to the payment of the note. A bank to which a depositor owes a matured debt may set off or apply his general deposit to the discharge of such debt, and this right at least with respect to a matured indebtedness is not dependent upon the consent of the depositor. Cf. Shotwell v. Sioux Falls Savings Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715; Farmers' State Bank v. Van Houten, 52 S. D. 528, 219 N. W. 206. But plaintiff takes the position that a bank may so deal with a depositor as to waive or be estopped to assert such right of set-off. Authorities are cited to the effect that a bank may be precluded

from exercising such right by a special agreement which shows that it was not intended by the parties, or where the long-continued course of dealing between the parties is inconsistent with its exercise. Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Simmons Hardware Co v. Bank of Greenwood, 41 S. C. 177, 19 S. E. 502, 44 Am. St. Rep. 700; Callahan v. Bank of·Anderson, 69 S. C. 374, 48 S. E. 293, 2 Ann. Cas. 203; Smith v. Sanborn State Bank, 147 Iowa, 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336.

 As a general rule, when money is deposited in a bank, title passes to the bank, and the relation between the depositor and the bank is that of creditor and debtor. While the relation so exists, the rule of set-off generally applies. But where money is deposited for a special purpose, a special deposit is created, and a bank becomes a trustee for the depositor. City of Sturgis v. Meade County Bank, 38 S. D. 317, 161 N. W. 327; Commercial Nat. Bank v. Smith, 60 S. D. 376, 244 N. W. 521. The bank is then precluded from exercising its right of set-off. Peterson v. Crawley, 38 S. D. 597, 162 N. W. 369; Smith v. Sanborn State Bank, supra. The evidence, however, was not sufficient to create an issue, as plaintiff contends, between the parties as to whether the item of $3,000 was a special and not a general deposit. Assuming that the purpose of the deposit was to meet certain checks and that the bank had notice or knowledge thereof, it does not appear that the bank agreed thereto or accepted the deposit with such understanding. Commercial National Bank v. Smith, supra. It appears from the evidence of the plaintiff that the deposit was made in the ordinary course of business and not upon such terms and conditions as to constitute a special deposit. The facts are not comparable to situations appearing in Guaranty State Bank v. Sumner (Tex. Civ. App.) 278 S. W. 459, and Gillen v. Wakefield State Bank, 246 Mich. 158, 224 N. W. 761, cited by plaintiff, where a deposit is known by a bank to be the proceeds of the sale of property and a constructive trust arises in favor of the true owner, preventing set-off by the bank.

We are convinced from a careful examination of the evidence that it did not tend to show an agreement for an extension of credit or that it would have been sufficient to sustain a verdict upon the ground that the bank so dealt with the plaintiff as to have

waived or to have been estopped to assert a right of set-off. There were negotiations between the parties, but it cannot be reasonably concluded that such negotiations resulted in an extension of the time of payment of the note or an agreement for credit.

For reasons stated, the judgment and order appealed from are affrmed.

WARREN, P. J., and POLLEY and RUDOLPH, JJ., concur.

CAMPBELL, J., disqualified and not sitting.