WHITE TRUCK SALES OF SAGINAW, INC., *v.* CITIZENS
COMMERCIAL & SAVINGS BANK.

1. Appeal and Error—Chancery Cases—De Novo Review—Trial
   Judge's Finding of Facts.
     The Supreme Court reviews chancery actions *de novo* but gives
     great weight to the view of the facts taken by the trial judge.

2. Banks and Banking—Commercial Account—Special Account.
     General commercial account which was used for all deposits and
     all checks of a going concern was not a special account or spe-
     cial deposit, notwithstanding the amount on deposit at time
     involved principally, if not entirely, arose out of transaction
     in which plaintiff was a material participant.

3. Same—Special Deposit—Burden of Proof.
     The burden of proving a bank account was a special deposit,
     rather than a general commercial account, is upon the plain-
     tiff claiming it to have been a special deposit and subject to
     trust it sought to impose.

4. Same—Special Deposit—Intent.
     Deposits are regarded as special only when made and intended
     for a special purpose by both depositor and bank.

5. Same—Special Deposit—Trusts—Evidence.
     Truck distributor who claimed deposit by dealer in latter's ac-
     count with defendant bank, which arose out of sale of new
     truck for which a customer's secondhand truck had been traded
     in, was a special deposit subject to impressment of a trust in
     plaintiff's favor *held,* not to have sustained burden of proof,
     where it appears deposits had been made and accepted in gen-
     eral commercial account of the dealer in defendant bank, and
     truck had been sold to the dealer on open account.

References for Points in Headnotes
[1] 3 Am Jur, Appeal and Error §§ 815, 895.
[2] 7 Am Jur, Banks §§ 418, 420.
[3-5] 7 Am Jur, Banks § 419.
[6] 7 Am Jur, Banks § 532 *et seq.*
[7] 7 Am Jur, Banks § 609 *et seq.*
[8] 7 Am Jur, Banks § 539 *et seq.*

6. Bills and Notes—Checks—Assignment of Deposit.

A check does not act as an assignment of any part of the funds
of the drawer then on deposit unless and until the check is ac-
cepted, or certified (CL 1948, § 439.191).

7. Same—Checks—Overdrafts.

Neither the drawer nor the payee of a check has any enforce-
able legal right to either full or partial payment of an over-
draft, under normal circumstances (CL 1948, § 439.191).

8. Same—Overdraft—Clean Hands.

A bank officer's promise to honor an overdraft, apparently a pure
accommodation to the drawer of the check, was not enforceable
by the payee in suit to impress a trust upon the bank account
as a special deposit, where, during period discussions were tak-
ing place relative to payment of check which had been returned
to payee once because of insufficiency of funds, an agent of
the payee had taken illegal repossession of drawer's tangible
assets in such a way as to terminate the drawer's business, as
the payee did not come into court with clean hands and may
not complain of bank which applied the account toward in-
debtedness of the drawer then in default on obligation to the
bank, secured in substantial part by the illegally repossessed
assets.

Appeal from Genesee; Roth (Stephen J.), J. Sub-
mitted October 9, 1956. (Docket No. 53, Calendar
No. 46,794.) Decided April 22, 1957.

Bill by White Truck Sales of Saginaw, Inc., a
Michigan corporation, against Citizens Commercial
& Savings Bank, of Flint, Michigan, a Michigan cor-
poration, to impress a trust on certain funds and to
enforce liability for its failure to honor a check
drawn thereon. Decree dismissing bill. Plaintiff
appeals. Affirmed.

*Cook & Cook,* for plaintiff.

*Winegarden & Booth,* for defendant.

Edwards, J. This is a suit in equity. The plain-
tiff, the White Truck Sales of Saginaw, Inc. (here-

after known as White Truck), seeks to impress a trust upon funds previously deposited in the account of one of its dealers, Collins White Truck Sales, Inc. (hereafter known as Collins), at the Citizens Commercial & Savings Bank, of Flint (hereafter referred to as the bank).

White Truck's claim is based upon a check issued to it by Collins in the sum of $6,327.44 in payment for a new truck. The bank, after refusing payment on the check as a result of insufficient funds, applied nearly all the funds in Collins' account to satisfy a chattel mortgage held by the bank in the sum of $5,472.02 which was in default.

The circuit judge before whom this case was tried held that the Collins funds on deposit were neither trust funds nor special deposit, that the bank had a right to set off its chattel mortgage claim against the Collins account, and that certain of White Truck's own improper acts had contributed to the ultimate insolvency of Collins to the extent of barring its right to equitable recovery in this action.

On appeal White Truck contends that the lower court erred on all 3 counts.

The trial judge in his opinion included a statement of the pertinent facts. A review of this record convinces us that this is both fair and complete, and we hereby adopt same:

"The facts in this case are as follows: In July, 1949, one Barrett approached the Collins White Truck Sales, Inc., and indicated his desire to trade in his secondhand truck on a new White truck. An understanding was reached, as a result of which the secondhand truck was sold through the good offices of the plaintiff. That sale was financed, and the proceeds of $2,600 were received by the plaintiff, who retained $500 to apply on an account for parts running from Collins to plaintiff, and sent $2,100 to Collins.

"On July 11, 1949, Collins drew a check in favor of plaintiff on the defendant bank, which was holding Collins' note and chattel mortgage for credit previously extended. The check was for $6,327.44 and represented payment from Collins to plaintiff for the new truck furnished Barrett. While drawn on the 11th of July, and given to plaintiff on that date, the check was dated the 15th of July. On the 12th of July Collins deposited the $2,100 received from the sale of the old truck, together with some other money, in the defendant bank.

"Some time between the 11th and the 15th of July, Collins called E. W. Potter, an officer of the bank, and stated that he had written a check for some $6,300 and probably would not have enough in the account to cover it, and asked if Mr. Potter would have the bank honor it. Mr. Potter gave him assurance that the bank would take care of the check and accept the overdraft.

"Proofs are clear that the Collins company was in a position of insolvency and had been for some time; that the bank had from time to time honored checks which had created overdrafts running into the hundreds of dollars at various times over the preceding year or so. On the 16th of July, Barrett received his new truck and Collins made a deposit of funds received from the sale in 2 items: $4,000 and $1,300. On the 19th of July, the defendant bank returned the check unpaid and protested it for 'not sufficient funds.'

"On the 21st a meeting was held in the office of the attorney for the bank. This meeting was attended by a representative of plaintiff, Collins, and Mr. Potter and others of the bank, and by the attorneys for the bank and for Mr. Collins. The discussion centered around the financial difficulties of the Collins company. Apparently a tentative conclusion was reached that Mr. Kersheske, the representative of plaintiff, might find a buyer for the company, and would contact Mr. Collins of any success along that line.

"On the next day Collins went to Saginaw to talk with Mr. Levinsohn, an officer of plaintiff corporation, who gave him some reason to hope that he or those represented by him might take over the Collins company. This was on the 22d of July. The same day the check which had been returned NSF by defendant, had made its journey from Flint to Saginaw and back to Flint, where it reposed in the collection department of the Flint branch of the Michigan National Bank. Proof is lacking as to exact dates but one can reasonably conclude that plaintiff had notice of the nonpayment and instructed its bank in Saginaw not later than the 21st to return it to Flint for collection.

"Following the news of the nonpayment, plaintiff called Collins, who in turn called Mr. Potter. Mr. Potter assured him the check would be paid if again presented; and Collins so informed plaintiff. On the evening of the 22d, the same day the check appeared in the Flint branch of the Michigan National Bank, Mr. Kersheske, without notice to Collins, took from the buildings of the Collins company all White truck parts and delivered them to plaintiff company in Saginaw.

"The following day, the 23d of July, Collins called plaintiff and talked with Mr. Kersheske to find out if his company or anyone else were interested in taking over the company. Kersheske said they were no longer interested. He did not inform Collins that he had taken the parts. On Monday, July 25th, Collins discovered that the parts were missing, and so notified the State police, his attorney, and the bank. Obviously the lack of parts to service trucks effectively put the Collins company out of business.

"On the 26th of July the defendant bank charged off the balance of its note against the Collins account, in the amount of $5,472.02. It should be added that the note was in default in the amount of 3 payments, each $226. But it is evident that the action of the bank was not motivated principally by such default. Had the check been honored it would have

caused an overdraft of $1,290, which was considerably more than any of the previous overdrafts allowed on the account by the bank.

"It appears clear too, that had Potter been contacted concerning the check when it was first presented he would have given instructions to pay it; but due to faulty intelligence between himself and the staff the check was dishonored.

"The items of deposit: $4,000 and $1,300 and $2,100 all flow from the same transaction, the trade-in and sale of an old truck and the sale of a new truck."

On appeal we are confronted with 4 questions which may be summarized thus:

(1) Is plaintiff entitled to recover on this check because the Collins account represented either special account or special deposit?

(2) Is plaintiff entitled to recover because under the circumstances equity should impress a trust on the funds in the Collins account in plaintiff's favor?

(3) Is plaintiff entitled to payment on the check because of the promise of an officer of the bank to Collins to honor an overdraft?

(4) Is plaintiff barred from recovery in equity by the clean-hands doctrine because of the acts of its agent, Kersheske, in removing the Collins spare parts stock?

The trial judged answered all of these questions adversely to plaintiff.

He found that the Collins account was a general commercial account, that it was in no sense special, and that none of the deposits therein were funds held in trust by Collins for plaintiff.

While on appeal we review chancery actions *de novo,* we give great weight to the view of the facts taken by the trial judge. *Lowry* v. *Paw Paw Savings Bank,* 132 Mich 228; *Moyer* v. *Hafner,* 272 Mich 52; *Hartka* v. *Hartka,* 346 Mich 453.

Further, the record disclosed the bank records of this account which indicate plainly that the Collins account was a general commercial account used for all deposits and all checks of this then-going concern. This fact, among others, distinguishes the instant case from both the *Morley* and the *Gillen Cases* relied upon by appellant. *Gillen* v. *Wakefield State Bank,* 246 Mich 158; *Morley* v. *University of Detroit,* 269 Mich 216 (96 ALR 1217).

The burden of proof as to a special deposit was on plaintiff. Deposits are regarded as special only when made and intended for a special purpose by both depositor and bank. The trial judge was correct in holding that it had not carried this burden. *Borgess Hospital* v. *Union Industrial Trust & Savings Bank,* 265 Mich 156; *Union Guardian Trust Co.* v. *Emery,* 292 Mich 394; *Northern Sugar Corporation* v. *Thompson* (CCA), 13 F2d 829.

Although most of the funds on deposit in the Collins account at the time in question actually came from Collins' sale of the White truck, White Truck had sold the truck to Collins on open account and the subsequent sale by him resulted in checks payable to his company and to which it had clear legal title. Not only did the bank not have any knowledge of any trust relationship, but, in addition, these funds were *not* trust funds in any sense.

This case is clearly distinguished on its facts from the *Burtnett* and *Patek Cases* relied on by appellant. We do not deal here with a depositor who deposited funds belonging to another in whose favor a trust is sought to be impressed. *Burtnett* v. *First National Bank of Corunna,* 38 Mich 630; *Patek* v. *Patek,* 166 Mich 446 (35 LRA NS 461).

The facts are that both White Truck and the bank had extended credit to Collins. Collins owed both parties substantial sums and by the time the White

Truck check had been dishonored was in default to each. At that time White Truck had a right of action against Collins upon the dishonored check. CL 1948, §§ 439.62, 439.72 (Stat Ann §§ 19.102, 19.112). It had no right of action at law against the bank since, under the negotiable instruments law, a check does not act as an assignment of any part of the funds of the drawer then on deposit unless and until the check is accepted, or certified. CL 1948, § 439.191 (Stat Ann § 19.231).

See, also, *McIntyre* v. *Farmers & Merchants Bank,* 115 Mich 255.

At that same time the bank had a right to declare its chattel mortgage a matured obligation because of default on payments and to proceed against Collins thereunder. One of the measures it could take (and eventually did) was to set off its claim as a lien against the funds which Collins had on deposit. *Gibbons* v. *Hecox,* 105 Mich 509 (55 Am St Rep 463) ; *Porter Auto Company* v. *First National Bank of Gilmore City,* 185 Iowa 844 (171 NW 121) ; 22 ALR2d 478.

The bank statement, exhibit G, indicates that at no time while the bank had the White Truck check for payment was the account sufficient to pay same without overdraft. Patently neither drawer nor payee under normal circumstances has any enforceable legal right to either full or partial payment of an overdraft. *Eads* v. *Commercial National Bank of Phoenix,* 33 Ariz 499 (266 P 14, 62 ALR 183). Hence, in this suit White Truck's claim in the end amounts to the assertion of a right to enforce the promise to honor the overdraft which one of the bank's officers made to Collins.

Whatever the effect of this promise (apparently a pure accommodation to Collins) might be otherwise, we agree with the trial judge that the actions

of White Truck's agent, Kersheske, were such as to bar the equitable relief which his principal now seeks.

While the bank was extending Collins credit and while discussions as to a possible sale of the business as a going concern were in progress, White Truck's agent, Kersheske, with knowledge of these facts, undertook the illegal repossession of Collins' stock of parts by surreptitious entry on the Collins premises. As the trial judge pointed out, this, beyond question, meant the termination of the truck sales and repair business in which Collins was engaged.

The bank being informed of same, certainly had a right to become an "anxious" rather than a "patient" creditor, and to reconsider its previous abstention from charging its overdue chattel mortgage against the Collins account. When White Truck's agent illegally seized chattels which represented a substantial part of the bank's security, White Truck can hardly complain at the bank's effort to forestall the imminent loss.

We agree with the trial judge that the circumstances related above did not warrant the intervention of a court of equity to impress a trust in favor of plaintiff. He who comes into equity must come with clean hands. 30 CJS, Equity, § 93, p 475.

The trial judge dismissed this bill of complaint. We affirm. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.