## MELVIN C. NIETZEL v. FARMERS AND MERCHANTS STATE BANK OF BRECKENRIDGE.

238 N. W. 2d 437.

January 30, 1976—No. 45693.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist*, for appellant.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Richard C. Hefte*, for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from the Wilkin County District Court. Plaintiff Melvin Nietzel sought damages from Farmers and Merchants State Bank of Breckenridge for an alleged breach of fiduciary duty. At the close of plaintiff's case, the court granted defendant's motion for dismissal of the action with prejudice. Motion for new trial was denied and judgment was entered in favor of defendant, from which plaintiff appeals.

Melvin C. Nietzel and his wife opened a passbook savings account with the Farmers and Merchants State Bank of Breckenridge, Minnesota, in April 1972. The Nietzels were issued a passbook for the account which stated as one of its provisions:

"The Bank reserves the right to deduct from deposits credited in this pass book any indebtedness it may hold against the original depositor or owner of this book."

In May 1972, Nietzel bought a service station for cash in Breckenridge which was owned by Skelly Oil Company. On November 13, 1972, Nietzel borrowed $20,000 from Farmers and Merchants Bank. A promissory note and a real estate mortgage on the "Skelly" property were executed by Nietzel and his wife to secure the loan.

By August 1973, nine other promissory notes executed by Nietzel to the bank were overdue. These notes were consolidated

into a single note totaling $29,837.50. On September 12, 1973, Nietzel executed an assignment of his savings account to the bank. This assignment stated that it "shall operate as security for payment of any other debts or liabilities of the undersigned to you now in existence or hereafter contracted." In December 1973 Nietzel paid off the consolidated promissory note.

The first payment, of $4,000 principal plus interest, on the note secured by the mortgage on the Skelly property was due on November 13, 1973. This payment was not made when due. After November 13, 1973, the note was accelerated pursuant to a provision therein so that the entire amount of $20,000 plus interest was due. On March 11, 1974, Mrs. Nietzel, on behalf of herself and her husband, requested to withdraw almost the entire savings account. The bank refused and applied the total amount in the account as a setoff against the promissory note. This raises the following issues:

1. Is a bank entitled to set off its claim against a customer's savings account when that claim is secured by collateral?

2. Is a depositor entitled to notice and a hearing before a bank makes a setoff against his account?

■ A bank's right to set off a debt owed it by a depositor against the depositor's account is a balancing of accounts between debtor and creditor. Minnesota has recognized this right even in the absence of a contractual agreement between bank and depositor. Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44 (1936). The Skolnick case involved a corporation president who deposited funds of the corporation in a savings account opened in his wife's name. This court held that the money was property of the corporation and the bank had the right of setoff against the demand note which the bank held against the corporation. We also indicated in that case that a bank's right to set-off is independent of a debtor's ability to otherwise liquidate his debt:

"It would have been poor banking not so to apply the deposit immediately [if] * * * there was danger that his debt would

not be otherwise liquidated. *Danger or not, the right of offset would be unquestioned.*" (Italics supplied.) 196 Minn. 323, 265 N. W. 47.

If the right to setoff is independent of the danger of loss to the bank, then the existence of adequate collateral is immaterial. In the instant case, moreover, the depositor agreed to the bank's right to setoff in accepting the passbook with its printed provisions and agreed again when he assigned his account as security for credit. There was no provision in either of those agreements requiring the bank to pursue first its remedy against the depositor's collateral. In Brunswick Corp. v. Northwestern Nat. Bank & Trust Co. 214 Minn. 370, 8 N. W. 2d 333 (1943), this court held that reasonable provisions in a savings account passbook constitute a binding contract between bank and depositor.

The majority rule involving a bank's right to setoff in circumstances involving secured loans was stated in Olsen v. Valley Nat. Bank of Aurora, 91 Ill. App. 2d 365, 371, 234 N. E. 2d 547, 550 (1968):

"* * * A bank should not be deprived of its right of setoff simply because it has the foresight to obtain collateral in exchange for obligations owed to it."

Surrounding jurisdictions also follow the majority rule: Davis Bros. & Potter v. Fort Dodge Nat. Bank, 216 Iowa 277, 249 N. W. 170 (1933); White Truck Sales of Saginaw, Inc. v. Citizens Commercial & Savings Bank, 348 Mich. 110, 82 N. W. 2d 518 (1957); Lincoln Crest Realty, Inc. v. Standard Apartment Development of West Allis, 61 Wis. 2d 4, 211 N. W. 2d 501 (1973); Calmenson Clothing Co. v. First Nat. Bank & Trust Co. of Aberdeen, 63 S. D. 338, 258 N. W. 555 (1935).

Although there is no Minnesota case directly on point, the law in Minnesota parallels the law in Illinois in that Minn. St. 336.9-501 allows a creditor to proceed with all available remedies until the debt is satisfied.

In In re Estate of Browning v. Eiken, 189 Minn. 375, 249

N. W. 573 (1933), this court recognized a contractual right to setoff in circumstances involving a secured loan. In that case, the depositor agreed that the bank was authorized "at any time, in its discretion, to apply any money or other property of any kind, which it may have or hold, on deposit or otherwise for said undersigned, towards the payment of said note and such other debts and liabilities, whether due or not." 189 Minn. 378, 249 N. W. 574.

This court held that such an agreement gave the bank a right to setoff against depositor's account even though collateral security in the form of hospital bonds had been pledged by the depositor. See also, 2 Dunnell, Dig. (3 ed.) § 787, for cases in which this court has recognized a right to setoff in other circumstances.

Contrary to plaintiff's arguments, the assignment of the account had not been released in the instant case. Plaintiff agreed when he assigned his savings account that it was to "operate as security for payment of any other debts or liabilities of the undersigned to you now in existence or hereafter contracted." The loan involving the Skelly property collateral was a debt to the bank in existence at the time of the assignment.

There is a minority line of cases which requires the bank to exhaust the collateral security before applying funds subject to withdrawal to the secured indebtedness of the depositor. Melson v. Bank of New Mexico, 65 N. M. 70, 332 P. 2d 472 (1958); Seaboard Finance Co. v. Shire, 117 Utah 546, 218 P. 2d 282 (1950). However, these cases are inapplicable where, as here, the depositor agreed to the bank's right to setoff. 5A Michie, Banks and Banking, § 119(c).

Plaintiff contends that the reasoning of Olsen v. Valley Nat. Bank of Aurora, *supra,* is inequitable in that it allows a bank to set off funds when there is little danger of loss. This argument recently was rejected in Allied Sheet Metal Fabricators, Inc. v. People's Nat. Bank of Washington, 10 Wash. App. 530, 518 P. 2d 734 (1974). Quoting 10 Am. Jur. 2d, Banks, § 339, the Court of Appeals of Washington noted:

"Although money on deposit in a bank is commonly considered to be the property of the depositor, the relationship in fact between him and the bank is that of debtor and creditor; the amount on deposit represents merely an indebtedness by the bank to the depositor. It is therefore a fundamental rule of banking law that in the case of a general deposit of money in a bank, the moment the money is deposited it actually becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor." 10 Wash. App. 537, 518 P. 2d 738.

That court also quoted 10 Am. Jur. 2d, Banks, § 666:

"It is a general rule that when a depositor is indebted to a bank, and the debts are mutual—that is, between the same parties and in the same right—the bank may apply the deposit, or such portion thereof as may be necessary, to the payment of the debt due it by the depositor * * *." 10 Wash. App. 537, 518 P. 2d 739.

■ Plaintiff alleges that the bank's setoff constitutes state action without notice or hearing and, therefore, was an unlawful taking of property in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff makes no attempt either by argument or authority, however, to demonstrate how the balancing of accounts between a debtor and creditor constitutes state action. Plaintiff's argument was rejected in Bichel Optical Laboratories, Inc. v. Marquette Nat. Bank, 336 F. Supp. 1368 (D. Minn. 1971), and in Kruger v. Wells Fargo Bank, 11 Cal. 3d 352, 113 Cal. Rptr. 449, 521 P. 2d 441 (1974). In the latter case, the Supreme Court of California said:

"* * * [T]he procedure of setoff * * * requires no act of assistance from state officials. * * * Judicial and legislative recognition of this private right of setoff does not mould the exercise of that right into a form of state action." 11 Cal. 3d 359, 113 Cal. Rptr. 453, 521 P. 2d 445.

We therefore hold that the bank has both an equitable and a contractual right to set off a debt owed it by a depositor against

the depositor's account. The fact that the bank also secured collateral for its loan in no way affects its right to setoff unless the depositor and bank have agreed to the contrary. Here the depositor agreed to grant the bank such a right. The trial court was correct in its holding.

Affirmed.