**FIRSTAR EAGAN BANK,
N.A., Appellant,**

v.

**MARQUETTE BANK MINNEAPOLIS,
N.A., et al., Respondents.**

**No. C9–90–2072.**

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Denied April 29, 1991.

Thomas M. Scott, Campbell, Knutson, Scott & Fuchs, P.A., Eagan, for appellant.

Michael B. Braman, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondents.

Considered and decided by PARKER, P.J., and HUSPENI and MULALLY,* JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

PARKER, Judge.

Firstar Eagan Bank sued Marquette Bank Minneapolis for conversion and wrongful dishonor of a check. Both parties brought motions for summary judgment. The trial court granted summary judgment in favor of Marquette and dismissed the complaint. The court held, on the conversion claim, that Firstar's security interest is subject to Marquette's right of setoff in the same funds.

On appeal Firstar challenges only the trial court's conclusion that Marquette's right of setoff is superior to Firstar's security interest. We reverse and remand for entry of summary judgment in favor of Firstar and for an order in accordance with this opinion.

## FACTS

Sterling Leasing, Inc., leased vehicles to individuals and businesses. Between 1985 and 1989, Firstar lent Sterling money to buy the vehicles. The loans were originally secured by Firstar's security interest in Sterling's inventory and equipment, but in April 1988 Firstar expanded its security interest to include Sterling's rights to payments.

In 1985, Sterling and Marquette signed a lessor operating agreement, the only written contract between Sterling and Marquette covering their overall relationship. It specifically refers to a Dealer Lease Escrow Account (DLEA) in the "Lease Work Sheet Document," part of the lessor operating agreement. An individual or company leasing a vehicle from Sterling was subject to Marquette's credit review. If Marquette approved the lessee, Marquette made an advance to Sterling in exchange for Sterling's assignment of the lease to Marquette. In addition, Marquette was listed as the first secured party on the leased vehicle's title certificate and Sterling executed a security agreement in favor of the bank.

On February 1, 1989, Terry McCleary, assistant vice president of the DLEA corporation and Marquette Bank's assistant vice president as well, allowed a principal of Sterling to take a number of out-of-state vehicle title certificates from Marquette to allow Sterling to register them in Minnesota and then return them to Marquette.

Sometime prior to February 6, 1989, Sterling presented Firstar with a balance sheet listing as an asset funds in the amount of $96,946 in the DLEA. Relying on these funds as additional security, Firstar lent Sterling $160,000 on February 6, 1989.

On February 16, 1989, Firstar informed McCleary that Firstar possessed certain vehicle titles which secured Sterling's debt to Firstar. When McCleary saw the list of vehicles to which Firstar had title, McCleary discovered they were the same titles he had allowed Sterling's principal to take from Marquette and concluded that Sterling's principal had obtained them under false pretenses, which constituted a default under the operating agreement.

On March 2, 1989, Sterling announced the company was out of business but would cooperate with the banks to assemble the vehicles and other collateral. On the same day, Firstar notified Sterling it was accelerating its notes and demanded payment of the entire balance of $467,929.60.

On March 3, 1989, Firstar wrote Marquette that Firstar owned the Sterling funds in the DLEA, based on its perfected security interest, and demanded payment. On that date, the funds in the DLEA involving Sterling's transaction with Marquette amounted to $122,204.70. Marquette subsequently exercised its purported right of setoff, debited the DLEA $122,204.70, and refused to turn over these funds to Firstar.

## ISSUES

1. Did the trial court err in concluding that Marquette's purported right of setoff was superior to Firstar's perfected security interest in the funds?

2. Did Marquette rightfully exercise setoff against the DLEA funds?

## DISCUSSION

### Standard of Review

 In reviewing an order granting summary judgment, the appellate court must determine whether any genuine issues of material fact exist and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The material facts are not in dispute. Therefore, this court need not defer to the trial court's conclusions of law. *Frost–Benco Electric Assn. v. Minn. Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984). Because Minn.R.Civ.P. 52.01 does not require the trial court to make findings of fact on a motion for summary judgment, this court is not bound by those findings. Its scope of review includes all of the "pleadings, depositions, and admissions on file, together with the affidavits." *State ex rel. Gopher Sales Co. v. City of Austin*, 246 Minn. 514, 517, 75 N.W.2d 780, 783 (1956).

## I

Article 9 of the Uniform Commercial Code (UCC) does not apply to a right of setoff. Minn.Stat. § 336.9–104(i) (1990). The supreme court in *Rose Creek v. First Bank of Austin*, 320 N.W.2d 723, 726 (Minn.1982), read Minn.Stat. § 336.9–104(i) as excluding setoff not only from the filing provisions but also from the priority provisions of Article 9.

 Sterling leased vehicles to third parties and assigned the leases to Marquette. Marquette then paid Sterling an amount based upon the capital cost of each lease. Alternatively, Sterling could defer part of the cash payment by allowing funds to be deposited in the DLEA.

Firstar claims that Sterling sold these leases to Marquette and that it now has a perfected security interest in the proceeds which is superior to Marquette's right of setoff.

Marquette claims the entire transaction was not a sale of the leases but, rather, a series of loans by Marquette to Sterling. The leases, Marquette maintains, were collateral securing the loans. Therefore, the funds were not proceeds and Firstar has no security interest in the sums deposited in the DLEA.

"Inventory" is goods held for sale or lease. Minn.Stat. § 336.9–109(4) (1990). "Collateral" means the property subject to a security interest and includes accounts and chattel paper which have been sold. Minn.Stat. § 336.9–105(1)(c) (1990). Proceeds are "whatever is received upon the sale, exchange, collection, or other disposition of the collateral * * *. Money, checks, deposit accounts, and the like are 'cash proceeds.'" Minn.Stat. § 336.9–306(1) (1990). The transfer of any interest in any deposit account is excluded from the coverage of Article 9, except as provided with respect to proceeds and priorities in proceeds. Minn.Stat. § 336.9–104(*l*) (1990).

We hold the DLEA funds to be proceeds resulting from Sterling's disposition of Firstar's vehicle leases. By assigning the leases and granting to Marquette a security interest in the vehicle, Sterling has sold, exchanged or otherwise disposed of collateral; Firstar has a perfected security interest in the cash resulting from that disposition, part of which remained in the DLEA. Marquette has the leases, and lessees make the payments directly to them.

 The lessor operating agreement has none of the characteristics of a loan agreement. It is ordinarily essential to the existence of a loan that there be both an actual delivery of something to another and a promise of repayment. *See, e.g., First Nat'l Bank of Idaho v. Reins*, 42 Idaho 720, 722, 248 P. 9, 11 (1926). If these elements are not present, the transaction is not a loan regardless of what the parties call it. *See Bank of Slater v. Union Station Bank*, 283 Mo. 308, 318–19, 222 S.W. 993, 996 (1920). The agreement contains only one parenthetical reference suggested as evidence of a loan. None of Marquette's documentary evidence contains a promissory note or other customary indicia of a loan. Nevertheless, we need not determine, nor did the trial court, that the transfer was a sale. The statutory definition of proceeds is sufficiently broad to

identify the deposits in the DLEA as such, since the deposits were part of Marquette's payment to Sterling upon Sterling's assignment, sale, exchange *or other disposition* of the collateral.

Marquette argues that, assuming Firstar had a perfected security interest, Marquette's right of setoff supersedes it, citing *Rose Creek*. *Rose Creek* seems inapposite. It dealt with an assertion of priority of the assignee bank of certificates of deposit of another bank issued explicitly subject to issuing bank's right of setoff. The assignee of a non-negotiable instrument could take no greater right than the assignor, and consequently the security interest was defeated. Because there is no instrument, negotiable or non-negotiable, to be considered here and because of the quite different nature of the DLEA (discussed below), we believe the perfected security interest in identifiable proceeds from the disposition of collateral is not defeated here.

■ The general rule in other jurisdictions is that a perfected security interest in proceeds is superior to the bank's right of setoff. *See, e.g., Citizens Nat'l Bank of Whitley County v. Mid–States Dev. Co.,* 177 Ind.App. 548, 380 N.E.2d 1243, 1248 (1978); *see also Universal C.I.T. Credit Corp. v. Farmers Bank of Portageville,* 358 F.Supp. 317, 329 (E.D.Mo.1973). Although Minnesota has no case on point, our courts are very protective of perfected security interests in proceeds. *See Barber–Greene Co. v. Nat'l Bank of Minneapolis,* 816 F.2d 1267 (8th Cir.1987) (perfected security interest in proceeds had priority when bank with inferior security interest attempted to put itself in a better position than those with superior interests).

## II

Marquette claims it had the right to exercise setoff against these funds in the DLEA, because Sterling owed Marquette money and defaulted on the agreement through its acts of fraud.

■ The right of setoff is an equitable remedy. "He who seeks equity must do equity." *Hruska v. Chandler Associates,*

*Inc.,* 372 N.W.2d 709, 715 (Minn.1985). The court in *Nietzel v. Farmers & Merchants State Bank of Breckenridge,* 307 Minn. 147, 152, 238 N.W.2d 437, 440 (1976), stated:

It is a general rule that when a depositor is indebted to a bank, and the debts are mutual—that is, between the same parties and in the same right—the bank may apply the deposit or such portion thereof as may be necessary, to the payment of the debt due by the depositor.

The prerequisites to setoff, which involves the extinction of mutual debts, are generally:

(1) Mutuality of obligation must exist;
(2) The funds used for the setoff must be the property of the debtor;
(3) The funds against which the setoff is exercised must be a general deposit as opposed to a special deposit; and
(4) The existing indebtedness must be due and owing at the time of the setoff.

*See, e.g.,* Clark, *The Law of Bank Deposits, Collections and Credit Cards* § 14.06, at 14–18 (3rd ed. 1990).

The bank improperly exercises setoff if the deposit account does not belong to the debtor as an unencumbered fund or if the bank knows that the account really belongs to someone other than the debtor. *Id.* at 14–18.

### A. *General Deposit Account*

■ Minn.Stat. § 336.9–105(1)(e) (1990) defines "deposit account" as a "demand, time, savings, passbook or like account maintained with a bank, saving and loan association, credit union or like organization, other than an account evidenced by a certificate of deposit."

The escrow arrangement operated as follows: When a lease was financed by Marquette, Sterling had the option of deferring payment of part of its profit and having the funds placed in a dealer lease escrow account controlled by McCleary. The amount deposited was then prorated over the number of months of the lease. Every three months, McCleary's department issued a report showing each lease, the

amount of profit deposited and the prorated amount to be paid that quarter. McCleary or other signatories on the account then issued a check to Sterling for the aggregate amount payable. If the customer defaulted on the lease and the bank repossessed the vehicle during the preceding three-month period, the balance in the account relating to that particular vehicle would be applied to the lease obligations. Otherwise, Sterling received the prorated portion of the amount deferred with respect to the lease. These funds which Marquette credited to Sterling in the DLEA were commingled with funds of 30 to 40 leasing companies with which Marquette dealt.

The nature of the DLEA does not appear to fall within the statutory definition of "deposit account." It was not payable on demand. It was not a savings account. It was more restrictive than a simple time account. Money was payable quarterly, but a determination was to be made at that time as to how much money to which each claimant, Marquette or Sterling, was entitled. If no lessees defaulted and it was unnecessary for Marquette to draw on the account, then Sterling was entitled to all sums due that quarter. Allocation was then made.

We do not believe the DLEA is a general deposit account, nor does Marquette's documentary evidence show it to be one. Because the DLEA was not a general deposit account, Marquette improperly exercised setoff.

B. *Mutuality of Obligation and Property of the Debtor*

Evidence shows that Marquette created the document designated the "Lessor Operating Agreement," which specifically refers to the DLEA.

McCleary, assistant vice president of Marquette, certified that (a) he was assistant vice president of the DLEA, a corporation organized under the laws of the state of Minnesota; (b) a meeting was called and held; (c) included was a complete and correct copy of resolutions adopted at the meeting; (d) Marquette was.

the depository for the funds of the corporation; and (e) five persons, including McCleary, were authorized to sign checks or deposit money in the DLEA. Thus, the DLEA corporation is the depositor of the funds in the DLEA, according to signature cards signed by McCleary.

Marquette takes the remarkable position of seeking an equitable remedy by asserting that the certification of the existence of this separate entity as depositor was a mere fiction, that this court should disregard the fiction created by Marquette's AVP, and that this court should consider the funds on deposit to be Sterling's. One may not take advantage of one's own fictions and misleading statements to ground an equitable right. "[H]e who comes into equity must come with clean hands." *Hruska,* 372 N.W.2d at 715. We believe Marquette is bound by the assertion of its officer, McCleary, that the funds in the DLEA are those of the DLEA corporation, subject to disbursement to Sterling or Marquette, depending on the credit experience of the leases. It is undisputed that the DLEA corporation is not a debtor of the bank. Since the funds were not yet allocated and disbursed, Marquette had no right to exercise setoff.

## DECISION

We hold that, as a matter of law, Firstar was entitled to summary judgment. We reverse the trial court and order entry of summary judgment on behalf of Firstar. The trial court must make an appropriate order recognizing that Sterling's right to payment from the DLEA is contingent upon lessees' payments to Marquette. Under the operating agreement, Marquette has a claim to certain payments from the DLEA if a lessee defaults. If all the lessees were to make full and timely payment, then Marquette would receive full payment and would have no charge against this fund. To have allowed a setoff would have resulted, in that case, in a windfall. On the other hand, immediate disbursement of all the funds to Sterling's secured creditor, Firstar, would cut off Marquette's right to charge against this fund *before* Sterling's

right to receive payment from the account had been determined. Because Firstar has a security interest in Sterling's rights to payment, Firstar may receive any money paid quarterly to Sterling from the DLEA, but no more than that amount. The trial court order should direct the DLEA corporation to make disbursements according to the lessor operating agreement and subsequent experience with the leases until all the monies have been disbursed.

Reversed and remanded.