**MINNESOTA VOYAGEUR HOUSEBOATS, INC.,**
Respondent,

v.

**LAS VEGAS MARINE SUPPLY, INC., a Nevada corporation, et al., Appellants,**

Northern National Bank, n/k/a Wells Fargo Bank, Respondent.

No. A04–866.

Supreme Court of Minnesota.

Jan. 26, 2006.

Heard, considered, and decided by the court en banc.

## OPINION

MEYER, Justice.

The question before this court is whether, upon receiving service of a garnishment summons from a judgment-creditor, a bank can exercise a contractual right to set off against money that a borrower had on deposit with the bank. The district court granted summary judgment to the judgment-creditor, concluding the bank had improperly exercised its setoff right. The bank appealed, and the court of appeals reversed the district court's judgment. *Minn. Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.,* 690 N.W.2d 762, 768 (Minn.App.2005). We affirm.

On August 24, 1994, respondent-borrower Minnesota Voyageur Houseboats, Inc. (Minnesota Voyageur), a business operating rental houseboats, obtained a $530,160 commercial loan from respondent-garnishee Wells Fargo Bank (the Bank). In re-

turn, Minnesota Voyageur signed a promissory note and agreed to the following payment schedule: "15 payments of $21,000 due July 1, August 1 and September 1 of each year commencing [September] 1, 1994 and a final payment due and payable in full on September 1, 1999." Minnesota Voyageur also entered into a security agreement granting the Bank a security interest in its accounts, equipment, fixtures, general intangibles, and inventory.

According to the promissory note and the security agreement, Minnesota Voyageur would be in default if it "permit[ted] the entry or service of any garnishment, judgment, tax levy, attachment or lien against [it], any guarantor, or any of [its] property or the Collateral." In the event of default, the Bank would be:

entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

(a) to declare the principal amount plus accrued interest under this Note and all other present and future obligations of Borrower immediately due and payable in full;

* * * *

(f) to set-off Borrower's obligations against any amounts due to Borrower including, but not limited to monies, instruments, and deposit accounts maintained with Lender; and

(g) to exercise all other rights available to Lender under any other written agreement or applicable law.

Moreover, the Bank's rights are "cumulative and may be exercised together, separately, and in any order" and "are in addition to those available at common law, including, but not limited to, the right of setoff."

On January 7, 1997, appellants-creditors Las Vegas Marine Supply, Inc., and other companies and individuals (collectively, Las Vegas Marine) obtained a $94,636 judgment for attorney fees, costs, and interest against Minnesota Voyageur in Nevada. On February 13, 1997, the St. Louis County District Court sent a notice to Minnesota Voyageur that it had entered the judgment against Minnesota Voyageur in Minnesota.

On August 20, 1997, Las Vegas Marine served the Bank with a garnishment summons, which required the Bank to provide, among other information, a financial disclosure of any assets that belonged to Minnesota Voyageur and were in the Bank's control. On August 21, 1997, without accelerating the loan, the Bank withdrew $40,700 from Minnesota Voyageur's checking account and subsequently applied this amount to the balance of the loan that was outstanding. The Bank stated in its response to the garnishment summons that it had claimed an "offset in the amount of $40,700" against Minnesota Voyageur, which "basically represents the amount in the checking account as of the day of receiving the garnishment." The record shows that prior to the garnishment, Minnesota Voyageur was current on its installment payments to the Bank. Specifically, Minnesota Voyageur had made the following payments totaling $63,000 to the Bank in 1997: $10,000 on June 24; $12,000 on June 30; $15,000 on July 14; $6,000 on July 21; $15,000 on August 4; and $5,000 on August 18.

In July 1999, Las Vegas Marine filed a complaint against the Bank in district court, claiming the bank had improperly set off funds from Minnesota Voyageur's checking account. In February 2004, the Bank sought a summary judgment against Las Vegas Marine arguing that at the time of the garnishment summons the Bank had superior rights in Minnesota Voyageur's properties and the setoff was proper. Las

Vegas Marine filed a cross-motion for summary judgment alleging that the Bank was not entitled to setoff. Specifically, Las Vegas Marine argued that (1) Minnesota Voyageur did not default until August 21, 1997, when Las Vegas Marine served it with the garnishment summons, (2) Minnesota Voyageur "did not owe [the Bank] anything" at the time of garnishment because the Bank failed to accelerate the debt; and (3) the Bank continued its normal banking relationship with Minnesota Voyageur after the setoff, and such a relationship is inconsistent with an equitable right of setoff.

On March 15, 2004, the district court heard the parties' cross-motions for summary judgment and, on March 17, 2004, granted summary judgment to Las Vegas Marine. The court found that Minnesota Voyageur was solvent at the time of the garnishment and the Bank was required to accelerate the debt before the Bank could exercise its setoff right. The court later entered a $40,700 judgment plus interest against the Bank.

The Bank appealed and on January 11, 2005, the court of appeals reversed the district court's judgment. *Minn. Voyageur*, 690 N.W.2d at 768. The court of appeals found that, according to the promissory note the parties entered into, the Bank's acceleration and setoff rights were alternative and cumulative. *Id.* at 767. The court further concluded that Minnesota Voyageur's debt was "due and owing" upon default, and the Bank could exercise its setoff right without first accelerating the debt. *Id.* at 768. This court subsequently granted Las Vegas Marine's petition for further review. On appeal, Las Vegas Marine argues that the court of appeals erred in reversing the district court because (1) the prerequisites for setoff were not met, and (2) the Bank's action

was inconsistent with the equitable remedy of setoff.

■ As this court has stated, summary judgment is proper where there are no genuine issues of material fact, and either party is entitled to judgment as a matter of law. *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 186 (Minn.2005). In the instant case, the parties agree that no question of material fact existed, and the court of appeals granted summary judgment to the Bank based on the court's application of law to the undisputed facts. As such, the applicable standard of review is de novo. *See Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

In contending that the Bank's setoff was improper because the prerequisites for setoff were not met, Las Vegas Marine specifically argues that (1) Minnesota Voyageur was not in default on August 20, 1997, when Las Vegas Marine served the Bank with the garnishment summons, and (2) the Bank's failure to accelerate the debt meant there was no debt that the Bank could properly set off against.

Contrary to Las Vegas Marine's assertion, the record indicates that Minnesota Voyageur defaulted prior to the service of the garnishment summons. As stated above, the promissory note provides that Minnesota Voyageur would be in default if it permitted the "entry or service of any garnishment, judgment, tax levy, attachment or lien against [itself]." On January 7, 1997, a Nevada court entered judgment against Minnesota Voyageur for its failure to pay the required attorney fees and other costs. On February 13, 1997, the judgment was entered against Minnesota Voyageur in Minnesota. Under the contractual language, these entries constituted default, entitling the Bank to exercise any or all of its rights

provided by the promissory note prior to August 20, 1997.

■ We next address Las Vegas Marine's claim that, even if there was a default, the Bank was not entitled to claim setoff because the Bank failed to accelerate the debt. As stated above, the promissory note and the security agreement provide that, in the event of a default, the Bank is entitled to, among other remedies, accelerate the entire debt and to set off against Minnesota Voyageur's obligation. Further, "[these] rights are cumulative and may be exercised together, separately, and in any order." We agree with the court of appeals' conclusion that the above language gave the Bank "the power to choose its remedies" in the event of default and the Bank is entitled to either exercise its right to accelerate or its right to setoff. *Minn. Voyageur,* 690 N.W.2d at 767.

■ We now turn to the question of whether the Bank had the right to set off the $40,700 in question. A bank's setoff right is the long-established "right * * * to appropriate the deposit of its customer upon the customer's default." Barkley Clark, *The Law of Bank Deposits, Collections and Credit Cards,* ¶ 14.01, at 14–2 (3d ed.1990). As stated, the promissory note provides that, in the event of Minnesota Voyageur's default, the Bank was entitled to "set-off [Minnesota Voyageur's] obligations against any amounts due to [Minnesota Voyageur] including, but not limited to monies, instruments, and deposit accounts maintained with [the Bank]." Here, at the time of setoff, Minnesota Voyageur had $40,700 in the checking account it maintained with the Bank. Under this provision, therefore, the Bank was entitled to claim setoff against the $40,700 if Minnesota Voyageur's obligation to the Bank equaled or exceeded $40,700.

■ The promissory note does not define "obligation" for the purpose of setoff, and the parties provided no argument on the nature of Minnesota Voyageur's obligation to the Bank at the time of setoff. According to Black's Law Dictionary, obligation is: "[a] formal, binding agreement or acknowledgement of a liability to pay a certain amount." *Black's Law Dictionary* 1104 (8th ed.2004).[1] We interpret the borrower's obligation to mean the amount of the borrower's outstanding debt to the bank; it is not limited to those amounts due and owing under the installment payment plan. Here, it is clear that Minnesota Voyageur's outstanding debt to the Bank exceeded $40,700 at the time of setoff: the payment schedule in the promissory note indicated that, as of August 21, 1997, Minnesota Voyageur was liable to the Bank for more than $40,700 in future payments. Because Minnesota Voyageur's obligation to the Bank exceeded the $40,700 on deposit in Minnesota Voyageur's checking account, the Bank had a contractual right to set off the entire $40,700 in question.

■ Las Vegas Marine contends the Bank's action was inconsistent with an equitable right of setoff. As the parties acknowledge, in addition to a contractual setoff right, Minnesota also recognizes an equitable setoff right. *See Nietzel v. Farmers & Merchs. State Bank of Breckenridge,* 307 Minn. 147, 152–53, 238 N.W.2d 437, 440 (1976). The proper exercise of the Bank's equitable setoff right would require Minnesota Voyageur's debt to the Bank to be due and owing at the

---

1. This definition is consistent with section 475.51 of Minnesota Statutes, which provides, in the context of public indebtedness, " '[o]bligation' means any promise to pay a stated amount of money at a fixed future date or upon demand of the obligee." Minn.Stat. § 475.51, subd. 3 (2004).

time of service of the garnishment summons. The promissory note, however, explicitly provides that the Bank's contractual rights are "in addition to those available at common law, including, but not limited to, the right of set off." As such, the Bank's exercise of its contractual setoff right was independent of the exercise of any equitable setoff right. Because the Bank was entitled to claim setoff pursuant to the promissory note, we need not address whether the Bank also had an equitable right to set off the $40,700.[2]

Affirmed.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

2. We note that the court of appeals held that Minnesota Voyageur's debt to the Bank was "due and owing" upon default and the Bank had an equitable right to set off the $40,700. 690 N.W.2d at 768. The court discussed the Eighth Circuit Court of Appeals' holding in *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302 (8th Cir.1989), and found "the reasoning of *Frierson* and its Missouri precedent is compelling." 690 N.W.2d at 767. We disagree. *Frierson* relied on the Missouri Court of Appeals' decision in *Herd v. Ingle*, 713 S.W.2d 887 (Mo.Ct.App.1986), to reach the conclusion that "Missouri law considers a debt due when the bank has the *power* to deem the debt due, not when the bank actually *exercises* that power." *Frierson*, 868 F.2d at 304 (citing *Herd*, 713 S.W.2d at 890). In *Herd*, the parties signed a security agreement that provided "at holder [bank]'s option[,] [the debt] would become immediately due and be payable 'without notice' upon any breach in the terms of the security agreement." *Herd*, 713 S.W.2d at 889. Based on this provision, the Missouri Court of Appeals stated that the holder bank's setoff right "was not lost by the bank not taking action to declare the note due before receiving service of the garnishment." *Id.* at 891. The conclusion, however, does not extend to a situation where, as in the instant case, a debtor's default does not automatically convert the installment loan into a payable-on-demand note.